# J. THOMAS WILLIAMS *vs.* HENRY M. FITZHUGH
## ET AL.

### *State Agency—Immunity From Suit.*

The board of trustees of a State normal school, consisting of the State board of education and the State superintendent of schools, cannot be sued by one employed as teacher for breach of contract, there being no statutory authority for such a suit, and the board having no funds available for the payment of a judgment against it.

*Decided February 12th, 1925.*

Appeal from the Baltimore City Court (FRANK, J.).

Action by J. Thomas Williams against Dr. Henry M. Fitzhugh and others, constituting the board of trustees of the State Normal School at Bowie. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*W. Ashbie Hawkins,* for the appellant.

*Thomas H. Robinson, Attorney General,* and *Edward H. Burke, Assistant Attorney General,* submitting on brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The declaration in this case alleges that the defendants, who constitute the board of trustees of the State Normal School at Bowie,

> "on or about the 25th day of August, 1921, engaged the services of the plaintiff as a teacher at the State Normal School, at Bowie, for the school year 1921-

1922, at and for the sum of nine hundred and sixty
dollars per year, payable in monthly instalments; that
on or about the 12th day of February, 1922, the plain-
tiff was dismissed without cause from the said State
Normal School at Bowie, no charges of any kind what-
ever having been preferred against him, and that the
salary due the plaintiff for the remainder of the term
was refused him, and that the payment of the same
is still refused though demand for the same has been
made, and though the Legislature of Maryland at its
session of 1920 duly appropriated the money to pay
the said salary."

A demurrer to the declaration was sustained, and, the
plaintiff declining to amend, judgment on the demurrer in
favor of the defendants for costs was entered.

The question to be determined is whether the defendants,
as the board of trustees of the Normal School, are sueable
for the alleged breach of contract. Their defense, interposed
by the demurrer, is that they constitute a State agency exer-
cising governmental functions, and are exempt from liability
to be sued in that capacity. It is contended for the plaintiff,
now the appellant, that the object of the suit is simply to
require the performance by the defendants of a duty imposed
upon them by law to pay the plaintiff money appropriated by
the Legislature for the service he was rendering in the posi-
tion from which he was dismissed, and that for such a pur-
pose the action is maintainable.

The appellant's brief explains that his employment as a
teacher at the Normal School was discontinued because of a
failure of the water supply, which necessitated the dismissal
of the pupils for the remainder of the term. It appears upon
examination of the Act of Assembly, to which the declara-
tion refers, that the schedules of salaries appropriated for
teachers at the State Normal School at Bowie include no
sum corresponding to the amount of the salary here sought
to be in part recovered. The demurrer states that the defend-
ants have no funds available for the payment of any judg-
ment which might be rendered against them in this case.

By section 82 of article 77 of the Code it is provided: "The state board of education and the state superintendent of schools shall be the board of trustees of each of the normal schools maintained and supported by the State." The general control of the educational interests of the State is committed to the State Board of Education. Section 12. It is invested with authority to determine the State's educational policies, and is charged with the duty of executing the Code provisions by which public education is sought to be promoted. Section 11. It is empowered to "enact by-laws for the administration of the public school system, which when enacted and published, shall have the force of law." *Ibid.* For the purpose of enforcing the provisions of article 77 of the Code, and the by-laws of the board duly enacted and published, it is authorized, if necessary, to institute legal proceedings. *Ibid.* There is no provision that the State Board of Education may be sued either in its general capacity or as forming, with the State Superintendent of Education, the board of trustees of the Normal Schools. Neither board has any means of procuring funds beyond the amount it receives from the State treasury, under budget appropriations by the General Assembly for specific uses.

Public education is a highly important interest of the State government. In the promotion of that interest the State is acting through an agency which the Legislature created for that purpose and to which broad administrative powers have been delegated. In performing its functions the State Board of Education is representing and exerting the State's authority. As a governmental agency of the State it shares the immunity from suit to which the State itself is entitled, in the absence of any legislative waiver of that exemption.

In *State v. Rich,* 126 Md. 643, we held the State Roads Commission to be immune from suit for an injury resulting from alleged negligence in the maintenance of a highway under its control. After describing the commission as a "governmental agency charged with the exercise of an important public function," and stating that the "establishment and maintenance of highways for the use of the people

is essentially a duty and prerogative of government," we said: "The State could act only through its agents in the prosecution of its policy of road improvement, and it organized the Roads Commission as the particular agency for utilizing a portion of its power and resources to that end. In view of the relation which the commission thus bears to the State, it is entitled, in a case like the present, to the benefit of the State's immunity from suit, unless it has been made liable to be sued for negligence by legislative enactment. The theory upon which the State is held to be exempt from such a liability is that the prosecution of suits against it, without its consent, would be incompatible with its sovereignty, and that any claim as to which it ought justly to assume responsibility would be satisfied voluntarily through the action of the Legislature. *State v. Baltimore & Ohio R. R. Co.,* 34 Md. 374; *Poe's Pleading* (4th Ed.), sec. 512."

The State Roads Commission, at the time of that decision, was liable, under section 78 of article 91 of the Code, to be sued for a violation of any of the provisions of the road law or of any contract thereunder, but it was held that the Code did not permit an action of tort against the commission, all of its funds being definitely devoted by law to other purposes, and no power being vested in the commission to raise money by taxation or otherwise to satisfy a judgment for damages. Similar considerations controlled the decision in *Weddle v. School Commissioners,* 94 Md. 334, and the same principle was applied in *Fisher v. Carozza Co.,* 138 Md. 586.

The present suit cannot be classified with *Weyler v. Gibson,* 110 Md. 636, which was an action of ejectment against a State officer to protect property of the plaintiff from acquisition by the State without compensation, nor with the cases of *Weller v. Mueller,* 120 Md. 633, and *Magruder v. State Roads Commission,* 125 Md. 525, which were proceedings to prevent the improper performance of public duties to the injury of taxpayers. The object of this action is to recover damages from a governmental agency for an act done in the course of the administrative service for which it was created. There being no legislative assent to such a suit against the

State's representatives who are defendants in this case, we must hold, upon the principle of the cases first cited, that the action cannot be maintained.

Some of the cases which the appellant relies upon were concerned with the enforcement by mandamus of the performance of ministerial duties. If it could be shown that there is in the custody of State officials, not amenable to suit at law, a salary fund to which the appellant is entitled, and the payment of which is a clear legal duty, not involving the exercise of discretion, the writ of mandamus might be available to enforce the asserted right. But that question is not now before us for decision. In the case presented our conclusion is that the ruling of the trial court on the issue raised by the demurrer to the declaration was correct.

*Judgment affirmed, with costs.*