## MARION LOHR *v.* UPPER POTOMAC RIVER COMMISSION

[No. 16, April Term, 1942.]

*Decided May 26, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*William L. Wilson, Jr.,* and *Edward J. Ryan* for the appellant.

*William C. Walsh*, with whom were *George W. Legge* and *W. Earle Cobey* on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

This is an appeal from a judgment for the defendant entered by the Circuit Court for Allegany County after sustaining a demurred filed by the defendant to the declaration filed by the plaintiff.

The declaration alleges that the plaintiff, appellant here, Miss Marion Lohr, a public school teacher, sustained injuries to herself, and to her automobile, by reason of the negligence of the servants of the appellee, the Upper Potomac River Commission, a body corporate, in placing large quantities of rock and debris in a public highway over which she was traveling.

The Upper Potomac River Commission was created by the General Assembly of Maryland, Acts of 1935, Chap. 409. In Section 1 of that Act it was provided that certain parts of Allegany and Garrett Counties should comprise the "Upper Potomac River District," and by Section 2 the Commission of three members was created as a corporate body with the necessary power to employ personnel for carrying out the duties of the Commission therein imposed upon it.

In Section 3 of the Act the powers and duties of the Commission are fully set out and described. It is therein provided that the Commission shall have "the right to use a common seal, to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the provisions of this Act. The said Commission shall have the power and authority to regulate the flow of water in the Upper Potomac River and its tributary rivers and streams within said district, and in pursuance of such power may erect, build, install and maintain dams, reservoirs and such other structures, with appurtenances and machinery deemed necessary for regulating the flow of water of said rivers or streams within said district for the purpose of carrying out the provisions or intentions of this Act, and may enter into

contracts and agreements with any Federal agency, or State or county, for the better control of such flow of water."

Section 4 of the Act authorizes the commission to accept State, Federal and private grants of money, or other aid, in carrying out its work. Sections 5 and 6, important to keep in mind in this case, are as follows: "That immediately after the passage of this Act and the organization of the commission, it shall enter into such negotiations with such State or Federal agencies as may be empowered to grant and/or furnish free funds to said Commission to carry out the purposes of this Act, and it is empowered to make any and all contracts and agreements requisite, for the purpose of obtaining, by free grant or gift all or any part of the amount of money necessary to purchase the land, structures or buildings or stream beds, water ways, road ways, rights of way, water rights or watersheds necessary to carry out the purposes of this Act, and for the construction of all dams, reservoirs, structures, appurtenances and machinery necessary for the control of the flow of water, as aforesaid, and for surveys and preliminary operations incidental to the constructions of dams, reservoirs, etc., contemplated hereunder, and also to accept the same outright in the form of a free grant or gift. And in the event said Commission shall be successful in such negotiations and shall make contracts or agreements, for the obtaining of such free aid, then and in that event, it shall begin the operations required under such contracts or agreements, and in the manner set forth in said contracts or agreements, it being the intention of this Act that said Commission shall not bind itself nor the County Commissioners for Allegany or Garrett Counties to the expenditure or any moneys for the capital outlay necessary for the land, structures, dams, reservoirs, etc., or the preliminaries necessary for the acquisition or construction, except as is hereinafter provided for."

Section 6, in part, provides: "The County Commissioners of Allegany County shall, in the event the Com-

mission succeeds in obtaining the things necessary to properly control the flow of the waters contemplated by this Act, annually levy upon the assessed property of said county a tax sufficient for maintaining and operating said dams, reservoirs, etc., and at least thirty days prior to the date of the making of the annual levy in said Allegany County, the said Commission shall certify under oath to the County Commissioners of Allegany County, the total amount of its outstanding monetary obligations as well as the estimated amount of money necessary to continue the operation and maintenance of said dams, reservoirs, etc., for the following fiscal year, and the said County Commissioners shall pay unto the treasurer of the Commission the amount so levied in the same manner as the other expenses of said county are usually paid. In the event that the said Commission shall begin the operation and maintenance of said dams, reservoirs, etc., at a time after the signing of the levy for that particular year, the County Commissioners of Allegany County shall pay in like manner from their contingent fund, sums of money sufficient for the maintenance and operation for the balance of that fiscal year."

The first question before us on this appeal is whether the appellee is a governmental agency performing a governmental function, and if it is, can it be sued in an action of tort arising out of negligent acts of its employees.

In the brief for the appellant it is conceded that a governmental agency cannot be sued in an action of tort "unless the State expressly consents to such a suit." But it is contended in this case that the words "to sue and be sued," used in the Act, are an express consent by the State that an action like this may be maintained against this Commission.

In considering the question of whether the words "to sue and be sued" as used in Section 3 of the Act was intended to constitute a waiver of immunity, we must not confine ourselves to those words alone, but we must construe them in connection with the other language

of the Act. The sentence in which those words are used is "with the right to use a common seal, to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the provisions of this Act." That sentence must be considered in its entirety, and when so considered, it definitely is not a general consent to suits of any and all kinds, but it is expressly limited to such actions as would be necessary in order to carry out the purpose for which the Commission was created. The words "other corporate acts" clearly indicate the extent to which the permission to sue and be sued was intended. The language used is not to sue and be sued *as other corporations.* Had such words been employed a broader consent might have been indicated. The creation of a corporation like this does not necessarily settle the question of whether a suit against it is, or is not, a suit against the State; and whether the State has, or has not, consented to be sued. The solution of that question, in many instances, depends upon the particular case. *Weddle v. Board of School Comrs.,* 94 Md. 334, 51 A. 289; *State v. Rich,* 126 Md. 643, 95 A. 956; *Williams v. Fitzhugh,* 147 Md. 384, 128 A. 137; *Engle v. Mayor and City Council of Cumberland,* 180 Md. 465, 25 A. 2d 446; Annotations, 13 *A. L. R.* 1276. In this case we think that consent to an action in tort has not been given.

The appellant next contends the "Commission was created as a separate corporation merely to perform a corporate duty and not for the purpose of performing any governmental duty, nor was any governmental duty given to the said Commission to perform." In support of that contention, appellant cites *Mayor and City Council of Baltimore v. State, to use of Blueford,* 173 Md. 267, 195 A. 571, 574, and quoted from that decision as follows: "That immunity extends to such agencies of the State as have no separate corporate existence, but are employed by it merely as hands or instruments to execute its will." But that is not all the court said. The statement continues: "But not to its creatures, such as municipal corporations, *except when exercising some*

*governmental function of the State iself."* (Italics supplied.) The exception definitely followed the rule that immunity may be invoked whenever a creature of the State is performing some governmental function. The test of the performance of a governmental function also is stated in the decision above quoted to be "where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature."

In this case the express, and only purpose for the creation of the Upper Potomac River Commission is to regulate the flow of water in the Upper Potomac River and its tributary rivers and streams within the district specified in the Act. It cannot be successfully argued that the regulation of waters, especially in times of floods, is not for the welfare and benefit of the general public who have their homes near the river, or that the health and safety of life and property are no concern of the State. The establishment of a district for the control of State waters, whether it be for the supplying of water to its citizens, or to control floods, is fully within the power and duty of the State to secure, preserve and promote the public health and safety. 29 *C. J., Health,* Sec. 10, p. 244; *Judge v. Bergman,* 258 Ill. 246, 101 N. E. 574, 576; *Wilson v. Board of Trustees,* 133 Ill. 443, 27 N. E. 203, 205; *Mayor and City Council of Baltimore v. State,* 168 Md. 619, 179 A. 169, 99 *A. L. R.* 680; *University of Maryland v. Maas,* 173 Md. 554, 558, 197 A. 123; *Williams v. Fitzhugh, supra; Conway v. New Hampshire Water Resources Board,* 89 N. H. 346, 199 A. 83.

In this case it must also be observed that the construction, operation and maintenance of the entire project are dependent solely upon State and Federal grants of money, or free contributions. Nowhere in the grant of authority is the Commission empowered to raise funds for any

purpose whatsoever. The State is authorized with the consent of the citizens of the district, to borrow money up to the amount of $200,000 to assist the Commission in aid of the acquisition, construction and maintenance of any lands, structures and dams. But there is no authority given to the Commission or to the State, to provide funds to pay damages is actions of tort. This court has clearly pointed out that unless funds are available, or may be made available by the agency itself for the purpose of paying damages, such suits may not be maintained against it. *Williams v. Fitzhugh, supra; State v. Rich, supra; University of Maryland v. Maas, supra.*

The Amendatory Acts of 1936, 1st Ex. Sess., Chap. 6, and 1939, Chap. 143, do not enlarge the power to raise or expend money for any purpose other than for acquisition of land, water rights, erection of dams and reservoirs, and for maintenance.

> *Judgment affirmed. Appellant to pay the costs.*