WEYERHAEUSER COMPANY (formerly known as Weyerhaeuser Timber Company), a corporation of the State of Washington

v.

STATE ROADS COMMISSION OF MARYLAND, acting for and on behalf of the State of Maryland, Defendant and Third-party Plaintiff, and Merritt-Chapman & Scott Corporation, a corporation of the State of Delaware, and C. J. Langenfelder & Son, Inc., a corporation of the State of Maryland, Defendants

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation of the State of Maryland, and the Aetna Casualty & Surety Co., a corporation of the State of Connecticut, and National Surety Corporation, a corporation of the State of New York, and Maryland Casualty Company, a corporation of the State of Maryland, and United States Fidelity & Guarantee Company, a corporation of the State of Maryland, and Hartford Accident & Indemnity Co., a corporation of the State of Connecticut, and Indemnity Insurance Company of North America, a corporation of the State of Pennsylvania, Third-Party Defendants.

STATE ROADS COMMISSION OF MARYLAND, acting for and on behalf of the State of Maryland, Cross-Claimant

v.

MERRITT–CHAPMAN & SCOTT CORPORATION, and C. J. Langenfelder & Son, Inc., Cross-Defendants.

Civ. No. 11841.

United States District Court
D. Maryland.

Oct. 7, 1960.

Clayton W. Daneker and George W. Constable, Baltimore, Md., and C. S. Huffman, New York City, for plaintiff.

C. Ferdinand Sybert, Atty. Gen., of Md., Joseph D. Buscher, Sp. Asst. Atty. Gen., Fletcher Krause and Herbert L. Cohen, Sp. Attys., Baltimore Md., for State Roads Commission of Md., defendant & third-party plaintiff and cross-claimant.

Norman P. Ramsey and Semmes, Bowen & Semmes, Baltimore, Md., for Merritt-Chapman & Scott Corp., defendant & cross-defendant.

Wm. B. Somerville and Smith, Somerville & Case, Baltimore, Md., for C. J. Langenfelder & Son, Inc., defendant & cross-defendant.

Norman P. Ramsey, David F. Albright and Semmes, Bowen & Semmes, Baltimore, Md., for Fidelity & Deposit Co. of Md., Aetna Casualty & Surety Co., National Surety Corp., Maryland Casualty Co., United States Fidelity & Guarantee Co., and Hartford Accident & Indemnity Co., third-party defendants.

Wm. B. Somerville and Smith, Somerville & Case, Baltimore, Md. for Indemnity Insurance Co. of North America, third-party defendant.

THOMSEN, Chief Judge.

The principal question raised by the pending motions is whether this court has jurisdiction over the claim against "State Roads Commission of Maryland, acting for and on behalf of the State of Maryland", included in the complaint.

### The Parties

Plaintiff is a Washington corporation,[1] which owns property on the south side of the Patapsco River, in Baltimore, Maryland.

Defendant State Roads Commission (the Commission) is an agency of the State of Maryland charged generally with the entire highway program of the State. See Art. 89B, Ann.Code of Md., 1957 ed. The powers, duties and obligations of the Commission vary with respect to the several responsibilities with

which it is charged, the several kinds of projects which it is authorized to undertake, and the several types of bonds which it is authorized to issue. Cf. Art. 89B, secs. 1–79, 80–101, 106–119, 120–140, 141–181, 182–188, 189–198, 199–211, 213, 214–219. The Patapsco River Tunnel Project is financed entirely by the proceeds of revenue bonds issued under ch. 561 of the Acts of 1947, as amended, Ann.Code, 1957 ed., secs. 120–140.[2] See Baltimore Gas & Electric Co. v. State Roads Commission, 214 Md. 266, 134 A. 2d 312; Mitchell v. Singstad, D.C.D.Md., 23 F.R.D. 62; 177 F.Supp. 376. Secs. 120–140, dealing with "Bridge, Tunnel and Motorway Revenue Bonds", provide that the bonds shall not be deemed to constitute a debt of the State or a pledge of the faith and credit of the State, but that such bonds shall be payable solely from the funds provided from revenues. Sec. 121. The Commission is given special powers and obligations with respect to such projects. See e. g. secs. 123(g) and 134. On the other hand, it is provided that the lands shall be acquired in the name of the State, sec. 125(a); the Commission shall have the usual condemnation powers, sec. 125(b); the Commission may covenant to pay all or any part of the cost of maintaining, repairing and operating any such project, and, "inasmuch as such project will at all times belong to the State, such covenant will have the force of contract between the State and the holders of the revenue bonds, or revenue refunding bonds issued on account of such project." Sec. 129(c). "The exercise of the powers granted by this subheading will be in all respects for the benefit of the people of the State, for the increase of their commerce and prosperity, and for the improvement of their health, living conditions and general welfare, and as the operation and maintenance of projects by the Commission will constitute the performance of essential governmental functions," the property and the bonds

---

1. It does not have its principal place of business in the State of Maryland or in the State of Delaware.

2. 1951 ed., Art. 89B, secs. 106–126.

shall be free of taxes. Sec. 132. When all bonds issued in connection with any such project shall have been paid or a sufficient amount for the payment of all such bonds shall have been set aside in trust, such project shall become a part of the State highway system and shall thereafter be maintained by the Commission free of tolls, subject to certain provisions. Sec. 135.

Defendants Merritt-Chapman & Scott Corporation (Merritt) and C. J. Langenfelder & Son, Inc. (Langenfelder) are corporations of the States of Delaware and Maryland, respectively, which had separate contracts with the Commission, acting for and on behalf of the State of Maryland, for the construction of portions of the Tunnel Project.

## The Pleadings

I. The complaint contains three claims:

(a) The claim entitled "Claim against the defendant, the State Roads Commission, acting for the State of Maryland", alleges that defendant Commission, "acting for and on behalf of the State of Maryland", entered into an agreement with plaintiff, under which plaintiff agreed to grant to said defendant certain interests and rights in a portion of plaintiff's property, for use by said defendant in connection with the Tunnel Project. Said defendant agreed, inter alia, to provide and maintain adequate retaining walls, slopes and supports within the lands granted to the State, so that there would be no loss of support for the adjoining property and facilities of plaintiff, and for itself and its contractors to construct said Tunnel Project in such manner as not to endanger, interrupt, or unreasonably interfere with plaintiff's operations, except as therein provided. The complaint alleges a breach of those contractual duties owed by said defendant to plaintiff, with resulting damage to plaintiff, for which said defendant has refused to pay.

(b) The claim against Merritt contains three counts: (1) alleging that under the contract between Merritt and the Commission, Merritt undertook certain obligations with respect to construction methods, non-interference with adjoining operations, protection of adjoining facilities, and the preservation and restoration of property, which were intended for the benefit of plaintiff and other landowners, but were breached to the damage of plaintiff; (2) alleging negligence on the part of Merritt; and (3) alleging removal of lateral support from and "dewatering" of plaintiff's lands.

(c) The claim against Langenfelder contains three counts, similar to those against Merritt.

II. The Commission, through the Attorney General of the State, filed:

(a) An answer to the complaint, setting up as a first defense: (1) that the Legislature of the State has not consented to the maintenance of this action against the State or "its instrumentality", the Commission, in this court or in any other court; (2) that this action is a suit against a State, beyond the judicial power of the United States under the Eleventh Amendment; and (3) lack of authority in the Commission and the Attorney General to waive such immunity;

(b) Cross-claims for indemnity or exoneration against Merritt and Langenfelder; and

(c) Third-party complaints against their respective sureties.

III. Merritt, Langenfelder and the sureties have filed motions to dismiss the cross-claims and third-party complaints: (1) relying on the jurisdictional points made by the State, (2) denying that the cross-claims arise out of the same occurrence or transaction as is alleged in the complaint, and (3) denying liability under the allegations contained in the several cross-claims and third-party complaints.

IV. Merritt and its sureties also moved to dismiss the original complaint as against the Commission, and Merritt

and Langenfelder have answered the original complaint as against themselves.

## Discussion

### I.

Plaintiff concedes that the Commission is an agency of the State. As such, under Maryland law and the Eleventh Amendment to the Federal Constitution,[3] it is entitled to sovereign immunity, unless such immunity has been waived by legislative enactment. State v. Rich, 126 Md. 643, 95 A. 956; Fisher & Carozza Bros. Co. v. Mackall, 138 Md. 586, 114 A. 580; Williams v. Fitzhugh, 147 Md. 384, 128 A. 137; University of Maryland v. Maas, 173 Md. 554, 197 A. 123; Lohr v. Upper Potomac River Commission, 180 Md. 584, 26 A.2d 547; Jones v. Scofield Bros., D.C.D.Md., 73 F.Supp. 395. Plaintiff does not contend that the Maryland Legislature has given any express consent to the maintenance of such an action as this in any court, but relies on an implied waiver of sovereign immunity. Cf. Art. 89B, sec. 131, which authorizes an action against the Commission by the Trustee named in the indenture under which the revenue bonds are issued.

Before 1916 the applicable statute, then codified as Art. 91, sec. 78, provided that the Commission could sue and be sued with respect to matters affecting particular county roads. In State Roads Commission of Maryland v. Postal Telegraph Cable Co., 123 Md. 73, 91 A. 147, decided in 1914, the Court of Appeals of Maryland permitted the Commission to sue Postal to recover compensation for use by the latter of the Conowingo Bridge. The Court said: "For all matters coming within the scope of their duties and obligations they could therefore sue, and were liable to be sued." 123 Md. at page 76, 91 A. at page 148. However, ch. 536 of the Acts of 1916 repealed and reenacted Art. 91, sec. 78, without retaining the phraseology respecting the rights to sue and be sued. In the Fisher & Carozza case the Court of Appeals stated that the decision in the Postal case was not based on the particular statute then in force but on the intrinsic nature of the particular claim involved. 138 Md. at pages 592, 593, 114 A. at pages 582, 583. See also 73 F. Supp. at page 397.

Since the 1916 amendment and the decision in State v. Rich, 126 Md. 643, 95 A. 956, it has been generally recognized that in its ordinary operations, at least, the Commission cannot be sued in the State courts either for tort or for breach of contract. I am advised that no such suit has been successfully maintained.

Jones v. Scofield Bros., D.C.D.Md., 73 F.Supp. 395, was a tort action arising out of the operation of a ferry by the Commission, under special statutory provisions, ch. 856 of the Acts of 1941, secs. 140A–140M of Art. 89B, Ann.Code of Maryland (1943 Supp.). After reviewing the Maryland decision up to that time (1947), Judge Chesnut said: "It is clear, therefore, ordinarily at least, that Maryland State governmental agencies may not be sued without their consent in the courts of the State. And the same result follows in this federal court by reason of the 11th Amendment. * * As I read the Maryland cases upon the subject of tort suits against State agencies, the doctrine of the court is that the question as to the liability to suit with respect to each particular agency depends upon the proper construction of the whole Acts of the Legislature under which the agency is created and operates. Thus in Lohr v. Upper Potomac River Commission, 180 Md. 584, 26 A.2d 547, supra, the agency was held not liable in a tort case even though the Act under which it was created expressly provided for suits by and against it. The court examined the whole Act and concluded that the general expression was not intended to create liability in tort. In

3. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

some of the cases the emphasis of the denial of liability in tort was placed largely if not wholly, upon the consideration that the agency was not provided with funds to pay damages in tort cases, and therefore had no means of responding in damages. But this consideration, while important, is not the only one which may affect the matter of construction of the statute on the point involved." 73 F.Supp. at pages 396, 397–398.

Since Judge Chesnut's opinion the Court of Appeals of Maryland has decided Baltimore Gas & Electric Co. v. State Roads Commission, 214 Md. 266, 134 A.2d 312. That case arose under the same statutory provisions involved in the instant case. Code, 1957 ed., Art. 89B, secs. 120–140. The question at issue was the liability vel non of the Commission under what was then sec. 120 (now sec. 134, 1957 ed.) for the removal and relocation of certain facilities of the Company. The Commission and the Company had entered into an agreement that the Company would do the work, that the Commission would advance the cost of the work, and "that the legal question of the ultimate liability for the costs would be submitted to appropriate courts." 214 Md. at page 270, 134 A.2d at page 313. The Commission brought an action against the Company in a State court for a declaratory judgment, so no question of jurisdiction was involved. After reviewing the statute, Judge Hammond said: "It is clear that Sec. 120 puts an obligation on the Commission, as an agency to whom the State has delegated the police power necessary for the doing of the work authorized, that it would not bear otherwise." 214 Md. at page 274, 134 A.2d at page 315.

As we have noted, see "Parties", supra, the obligation declared in the Baltimore Gas case, and the contractual obligations alleged in the instant case, are not general obligations of the State, but are obligations to be satisfied out of the proceeds of the revenue bonds issued and tolls collected pursuant to secs.

120–140 of the 1957 Code. See particularly sec. 134, formerly sec. 120. These statutory provisions differ somewhat from the provisions considered by Judge Chesnut in Jones v. Scofield Bros. Moreover, the instant action against the Commission is for breach of contract and not for tort. These are important factors to be considered on the question whether the State has waived its sovereign immunity and has consented to be sued on such a claim as is alleged in the instant case. But it is not necessary, and it would be inappropriate,[4] for this court to decide that question unless this court has jurisdiction under the diversity statute, 28 U.S.C.A. § 1332.

## II.

■ The diversity statute, 28 U.S.C.A. § 1332, provides: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—(1) citizens of different States; * * *." Diversity jurisdiction is not granted where one of the parties is a State. The diversity issue turns on the question whether the action is against the State of Maryland or against the Commission or Commissioners as a citizen or citizens of the State.

The question whether the State has consented to be sued is not determinative of the issue of diversity jurisdiction. In O'Neill v. Early, 4 Cir., 208 F.2d 286, 289, the Court said: "The fact that the state has authorized the defendant school board to sue and be sued is immaterial, since it has not consented to suit in the federal court. [citing cases] Even if it had consented to be sued in the federal court, jurisdiction is lacking since no federal question is involved and there is no diversity of citizenship in a suit which, although nominally against state agencies and officers, is in reality a suit against a state."

■ A state may waive its immunity under the Eleventh Amendment, but di-

---

**4.** Since an action on this claim may be instituted in a State court.

versity jurisdiction cannot be created by consent where it does not exist under the statute. Plaintiff relies on diversity jurisdiction in the instant case; no federal question is involved, and jurisdiction is not claimed under any other statute granting jurisdiction to the district courts. Such cases as Petty v. Tennessee-Missouri Bridge Commission, 359 U. S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804, where a federal question was involved are not controlling here.

■ Diversity jurisdiction depends upon whether the state is the real party in interest. That question is to be determined not by the names of the titular parties, but by the essential nature and effect of the proceeding as it appears from the entire record.

Plaintiff contends that the proper test to apply is whether a special fund has been provided out of which the claim can be paid. That factor is important, perhaps determinative, on the question whether the State has consented to be sued on a particular claim, or has waived its sovereign immunity under the Eleventh Amendment. But it is not the only factor to be considered on the question of diversity jurisdiction. In the leading case of State Highway Commission of Wyoming v. Utah Const. Co., 278 U.S. 194, 49 S.Ct. 104, 106, 73 L.Ed. 262, the Supreme Court based its decision not only on the fact that the Highway Commission had no funds or ability to respond in damages, but also on the fact that the contract had been made by the State, acting through the Highway Commission, and the fact that neither the Commission nor any of its members had assumed any direct or personal responsibility. The Court concluded that the Commission was "but the arm or alter ego of the state", and that the action brought against it in a federal court for breach of contract could not be maintained. The decision was based on the diversity statute; the Eleventh Amendment was not mentioned.

In O'Neill v. Early, supra, the Fourth Circuit held that the action was barred by the Eleventh Amendment. Judge Parker said: "This is not a suit against a municipal corporation or against officers of the state as individuals, but against an agency of the state, sued as such, and an officer of the state sued in his official capacity. Its purpose is to obtain a judgment which will establish a liability of the state and will be payable out of public funds controlled by defendants in their supervision of the state's education system. It is perfectly clear that such a suit is one against the state which falls within the inhibition of the Eleventh Amendment." 208 F.2d at page 288. And, as we have seen, the Court also held that even if the state had consented to be sued in a federal court, jurisdiction would still be lacking, "since no federal question is involved and there is no diversity of citizenship in a suit which, although nominally against state agencies and officers, is in reality a suit against a state." 208 F.2d at page 289. A separate fund was only one of the factors discussed by Judge Chesnut in Jones v. Scofield Bros., D.C.D.Md., 73 F.Supp. 395.

No single guiding thread runs through all of the cases. An annotator has noted that "determination of the question as to when a state is the real party to the action so as to preclude Federal jurisdiction based on diverse citizenship has been made to depend on various circumstantial factors, such as the pecuniary or beneficial interest of the state generally, whether the subject matter involved is a governmental function as distinguished from a private right, or whether the officer or agency which is the nominal party to the suit is an arm or alter ego of the state or a separate legal entity." 147 A.L.R. at 796. See also Pennsylvania Turnpike Commission v. Welsh, 3 Cir., 188 F.2d 447, 450; Florida State Turnpike Authority v. Van Kirk, D.C. S.D.Fla., 146 F.Supp. 364.

In some instances other states have created new, separate state agencies—sometimes incorporated, sometimes not—to construct and operate special projects, such as turnpikes and bridges; in other

instances they have granted new powers and duties to existing agencies.

Where a new, separate agency has been created, the decisions have not been uniform. District Courts in Pennsylvania have held that the Pennsylvania Turnpike Commission can be sued under the diversity section. Masse v. Pennsylvania Turnpike Commission, D.C.E.D. Pa., 163 F.Supp. 510; Linger v. Pennsylvania Turnpike Commission, D.C.W.D. Pa., 158 F.Supp. 900; Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission, D.C.M.D.Pa., 34 F.Supp. 26. However, the Third Circuit refrained from deciding the question in Pennsylvania Turnpike Commission v. Welsh, 188 F.2d 447, 450, stating the arguments on both sides. Judge Moore followed the Pennsylvania District Court cases in Guaranty Trust Co. of New York v. West Virginia Turnpike Commission, D.C.S.D.W.Va., 109 F.Supp. 286.

Other courts have refused to follow the Pennsylvania District Court opinions. See e. g. Fowler v. California Toll-Bridge Authority, 9 Cir., 128 F.2d 549, and Florida State Turnpike Authority v. Van Kirk, D.C.S.D.Fla., 146 F. Supp. 364. In the Fowler case the court said: "In all its functions, the Authority is representing and assisting the State in the performance of a traditional governmental function, that of building, operating and maintaining bridges and highway crossings as a part of the government system of state highways. The Authority is not a distinct and separate entity embarked upon a profit making commercial enterprise in competition with private citizens. The Authority owns no property. The bridges belong to the State. It has no capital stock. It derives no income to itself. All tolls and revenues received from the operation of the bridges are paid into the State Treasury and become state funds. The members of the Authority are all state officials, none of whom receive any compensation for the services they perform as members of The Authority in addition to their regular salaries received for their services to the State."

128 F.2d at page 551. The Court held that the action was, in effect, against the State of California, and, therefore, that there was no jurisdiction under the diversity section.

In State Highway Commission in Arkansas v. Kansas City Bridge Co., 8 Cir., 81 F.2d 689, the Court held that the Arkansas Highway Commission was not a citizen for diversity purposes, emphasizing the fact that the Commission was not a body corporate.

Where a corporation has been created to operate such a project, it has generally been held to be a citizen within the meaning of 28 U.S.C.A. § 1332. See e. g. Bartron v. Delaware River Joint Toll Bridge Comm., 3 Cir., 216 F.2d 717, certiorari denied 348 U.S. 943, 75 S.Ct. 364, 99 L. Ed. 738, and Louisiana Highway Commission v. Farnsworth, 5 Cir., 74 F.2d 910, certiorari denied 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259, which was based largely upon a state court decision. Even where the agency was a corporation, however, the Fifth Circuit in Kansas City Bridge Co. v. Alabama State Bridge Corp., 59 F.2d 48, certiorari denied 287 U.S. 644, 53 S.Ct. 90, 77 L.Ed. 557, denied jurisdiction on the ground that the suit was one against the state. The Court said: "It is clear that the whole purpose of the act was to erect bridges essential to the highway system, to pay for them with tolls, and then to make them free for the use of the public. It is well settled that the construction of public roads and bridges is a governmental function. * * * The state may either perform this function in its own name or through its public officers or one of its governmental agencies. * * The Alabama Bridge Corporation was but an agency or instrumentality through which the state acted in causing its public bridges to be constructed. It was not a private corporation in any sense of the word, but state officials, who might as well have been designated a board or commission, were ex officio members, and the only members, of it. * * * In the nature of things the state had to choose some such agency

in order to effectuate its purpose. * * * The state itself is directly concerned in the construction and maintenance of public roads and bridges, in the same way that it is in its public school system in the maintenance of which it hardly will be doubted that it is performing a governmental function. * * * Its interest is different from that which it has in its railroad commission, or governmental subdivisions, such as counties and municipalities, which are given many powers of their own, private as well as governmental." (Citations omitted.) 59 F.2d at pages 49, 50. See also Florida State Turnpike Authority v. Van Kirk, D.C. S.D.Fla., 146 F.Supp. 364, and Dunnuck v. Kansas State Highway Commission, D.C.D.Kan., 21 F.Supp. 882.

When the State has not created a new agency, but has simply granted additional powers and duties to an existing agency, such as the State Roads Commission, no case has been cited which has sustained an action under 28 U.S.C.A. § 1332, and I have found none.

The Maryland Legislature did not create a new agency, but charged the State Roads Commission with the duty of administering the projects to be financed by revenue bonds, such as the Tunnel Project involved in this suit. As we have seen, the powers and duties of the Commission vary to some extent according to the various responsibilities, projects and bond issues with which it deals. Some of the provisions with respect to projects financed by revenue bonds under secs. 120–140 differ from similar provisions with respect to other responsibilities, projects and bond issues of the Commission. But, on the whole, the provisions of secs. 120–140 indicate that the Legislature intended the Commission to act with respect to such projects as an arm of the State. The parties seem to have held this view, for the contract with the plaintiff was made by "State Roads Commission of Maryland, acting for the State of Maryland", and it is alleged in the complaint that the construction contracts with Merritt and Langenfelder were made by the "State Roads Commission acting for and on behalf of the State of Maryland".

I conclude that the action is against the State of Maryland and not against a citizen or citizens of the State within the meaning of 28 U.S.C.A. § 1332. I reach this conclusion reluctantly, because it would be desirable to try in one case all the claims, cross-claims and third-party claims arising out of the one transaction. On the other hand, it is desirable that a state court rather than a federal court pass on the question of whether the State has waived its sovereign immunity and consented to be sued on such a claim as is presented in the instant case.

This conclusion makes it unnecessary to decide the question whether the State has waived its immunity under the Eleventh Amendment in a case where diversity jurisdiction is not required, as well as the question whether the State has consented to be sued in a State court.

III.

If this court had jurisdiction of the claim against the Commission, I would dismiss, as without merit, the contention that the cross-claims and third-party claims do not arise out of the same transaction or occurrence as that alleged in the complaint. See Rules 13 (g) and 14(a), F.R.Civ.P., 28 U.S.C.A.

However, for the reasons stated, I must dismiss the claim against the Commission included in the complaint, and the cross-claims and third-party complaints filed by the Commission against Merritt, Langenfelder, and their sureties.

It is so ordered.