STATE of Oregon, ex rel. Mary Wendy ROBERTS, Commissioner of the Oregon Bureau of Labor and Industries, Plaintiff,

v.

MUSHROOM KING, INC., a California corporation, and Citicorp Industrial Credit, Inc., a Delaware corporation, Defendants.

No. CV 87–285–PA.

United States District Court, D. Oregon.

Aug. 25, 1987.

Dave Frohnmayer, Atty. Gen., Victor Levy, Asst. Atty. Gen., Dept. of Justice, Portland, Or., for plaintiff Oregon Bureau of Labor and Industries.

G. Kevin Kiely, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendant Citicorp Indus. Credit, Inc.

## OPINION

PANNER, Chief Judge.

This action was originally filed in state court by the State of Oregon on relation of Wendy Roberts, Commissioner of the Oregon Bureau of Labor and Industries (Commissioner), to recover unpaid wages for about 350 former employees of Mushroom King. Defendants Citicorp Industrial Credit, Inc. (CIC) and Mushroom King, Inc., removed it to this court. The state moves for dismissal and remand or, in the alternative, it seeks abstention and remand. Defendant CIC moves for a transfer of venue to the California bankruptcy court or, in the alternative, a stay pending the bankruptcy proceeding. I grant the state's motion and deny the defendant's motion.

## BACKGROUND OF THE CASE

Friday, January 16, 1987, was payday for the 350 employees of Mushroom King, Inc., a California corporation, at its operation in Salem. They went home without the bacon. Mushroom King ceased doing business that day. The employees have never been paid their accrued wages of about $175,000. Mushroom King immediately surrendered the entire business and all property to CIC, a secured creditor, who on January 20, started to wind down the business through an agent, Oak Grove Mushroom, Inc.

The state filed this action in state court on February 11 against both Mushroom King and CIC. On February 17, Mushroom King filed a chapter 7 bankruptcy petition in California bankruptcy court. That court modified the automatic stay so that CIC could remain in possession and operate the facilities long enough to wind them down. A trustee was appointed. Since that time, CIC has acted as the agent for the trustee.

On July 27 I granted the state's motion to dismiss Mushroom King without prejudice because of the bankruptcy.

## STATE'S MOTION TO DISMISS THE REMOVAL AND REMAND, OR ABSTAIN

There are several tiers of argument presented by the state in support of its motion to dismiss the removed case and to remand or, in the alternative, to abstain. First, the state contends that this court is without diversity jurisdiction because the Oregon Commissioner of Labor is not a citizen for purposes of diversity of citizenship. Second, the state contends I should abstain from exercising authority in the case because it involves important state law issues of first impression. Third, the state contends that this court lacks jurisdiction because it is neither a "core" bankruptcy case nor a "related" case under Title 11. Finally, the state contends that if I find bankruptcy jurisdiction, I must abstain either mandatorily under 28 U.S.C.

§ 1334(c)(2) or in my discretion under 28 U.S.C. § 1334(c)(1).

I consider these arguments in turn.

## I. *Diversity Jurisdiction.*

 Diversity jurisdiction exists if the controversy arises between citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction does not exist when the controversy arises between a state and citizens of another. *State Highway Commission of Wyoming v. Utah Construction Co.,* 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929). The state is not a citizen for purposes of diversity jurisdiction because a state is entitled to sovereign immunity under the eleventh amendment. *Weyerhaeuser Co. v. State Roads Commission of Maryland,* 187 F.Supp. 766, 769 (1960). If the state is the real and substantial party in interest, the case must be remanded. *Missouri, Kansas and Texas Railway Co. v. Missouri Railroad and Warehouse Commissioners,* 183 U.S. 53, 59, 22 S.Ct. 18, 20, 46 L.Ed. 78 (1901). The state is the real party in interest when the relief sought is that which inures to it alone and when the judgment or decree, if in favor of the plaintiff, would effectively operate in favor of the state. *Id.* When a state agency is involved, the issue is whether the agency is nothing more than an arm of the state, performing an essential governmental function, or whether it is an entity separate and apart from the state. *De-Long Corp. v. Oregon State Highway Commission,* 233 F.Supp. 7 (D.Or.1964), *affirmed,* 343 F.2d 911 (9th Cir.), *cert. denied,* 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965). Additional factors include: (1) whether state law requires that the action be brought in the name of the state; (2) whether the action will affect the state treasury; (3) whether the state agency is performing a governmental or proprietary function; (4) whether the agency is separately incorporated; (5) the degree of autonomy of the agency; (6) whether the agency has the power to sue and be sued and to enter into contracts; (7) whether the agency is immune from state taxation; and (8) whether the state has immunized itself from responsibility for the agency's acts.

*Id.* The removing party has the burden of proving that removal was proper and that the federal court has jurisdiction. *Wilson v. Republic Iron and Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921).

Oregon recently enacted a statutory scheme, administered by the Commissioner, to pay unpaid employee wages. 1985 Or. Laws ch. 409, ORS 652.310–.405. The scheme includes the creation of a Wage Securities Fund (Fund) out of which the payments are made. The state contends that it is the real party in interest because the outcome of the case affects the Fund.

The Commissioner is charged with enforcing laws for the protection of employees, including wage payment and collection statutes. ORS 652.330(1)(b) provides that the Commissioner shall:

> [T]ake assignments, in trust, of wage claims.... All such assignments shall run to the commissioner.... The commissioner may sue employers on wage claims and other persons or property liable for any payment thereof thus assigned.

ORS 652.330(2) provides that:

> An assigning wage claimant shall not be regarded as a party to any court action brought by the commissioner under this section for any purpose.

The legislature allocated about $1 million for the Fund, from which to pay employees who had not been paid when their employers went out of business. The Fund is financed by a tax on business employers. The state contends that the employees of Mushroom King have assigned their wage claims to the Commissioner and that they qualify for payment from the Fund. It contends that CIC is liable to it as an "other person" under ORS 652.330(1)(b). It contends that because there does not presently appear to be any real likelihood that the bankruptcy estate of the defendant, Mushroom King, will have sufficient assets to pay the wages, the Fund will have to pay each employee up to $2,000 unless CIC is held liable. The state points out that the employees will be paid in whole or in part regardless of the outcome of this

suit, and that therefore the financial risk is solely its own. In addition, it points out that the state undertakes this action exclusively and pays all litigation or collection costs. ORS 652.370(2) provides that the Commissioner shall prosecute on the Commissioner's own official relation, but in the name of the state.

Defendant contends that the state in this case is a person for purposes of diversity jurisdiction because the Commissioner is not enforcing a public right or sovereign interest but seeks only to enforce the rights of specific individuals who have assigned their wage claims to the state. It points out that the employees have, as stated in ORS 652.330(1)(b), assigned their interest to the state "in trust." Defendant points out that all money collected from judgments pursuant to ORS 652.330(1)(b) are deposited in a "trust account" known as the Wage Collection Account (Account). ORS 652.400 provides that this money is to:

> be deposited in the State Treasury to become part of a special trust account to be known as the Wage Collection Account.... All moneys in the Wage Collection Account hereby are appropriated continuously for the purpose of payment to the persons entitled thereto.

In *Missouri Railroad,* the state railroad commissioners brought suit to compel compliance with their order regarding rates. The court held that the state was a person for purposes of diversity jurisdiction because the money from the rate decrease ordered by the commissioners would not inure to the benefit of the state, but to those who use the railroad bridge. *Missouri, Kansas and Texas Railway Co. v. Missouri Railroad and Warehouse Commissioners,* 183 U.S. at 59, 22 S.Ct. at 20. The Court further stated:

> It is true that the State has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the State, as an organized political community, a party in interest in the litigation.... The interest must be one in the State as an artificial person.

*Id.* at 60, 22 S.Ct. at 21. The Fourth Circuit held similarly in *Blease v. Safety Transit Co.,* 50 F.2d 852 (4th Cir.1931), when the South Carolina railroad commissioner sued to enjoin interstate buses from traveling through the state after a permit had been denied. The court held that the real party in interest was not the commissioners but those who operate buses on the state highways. In *State of Louisiana ex rel. Guste v. Fedders Corp.,* 524 F.Supp. 552, 556 (M.D.La.1981), the court held that the Louisiana Department of Urban and Community Affairs was a citizen and could be sued in diversity when it brought an unfair trade suit against the defendant because its thermostats were defective and were not being repaired appropriately under warranty. The department was a separate corporation with a considerable degree of autonomy under the state, and the suit, the court said, did not benefit the state treasury but was an action simply to make the state consumers whole.

In *DeLong Corp. v. Oregon State Highway Commission,* 233 F.Supp. at 7, plaintiff sued the Oregon State Highway Commission in federal court for a declaration of its rights in connection with a contract for bridge construction. Judge Kilkenny, as district judge, thoroughly analyzed the cases and many relevant factors. He held that the Highway Commission was an agent of the state and not a citizen for diversity purposes. He considered "of great importance, and, in my judgment, a deciding factor" the statutory requirement that the commission institute eminent domain proceedings "in the name of the state, by and through the Commission." *Id.* at 12. He distinguished many other cases in which the agency was required to use its own name to issue contracts, or to acquire property, or to sue and be sued, or to issue bonds, and where these activities created no obligation on the part of the state. *Id.* at 12–13. He also considered important the observation made in *Weyerhaeuser* that generally when an agency had been created to operate a specific project, it was a citizen for purposes of diversity, but when the

state had simply granted additional powers and duties to an existing agency, it was not. *See, Weyerhaeuser Co. v. State Roads Commission of Maryland,* 187 F.Supp. at 772.

■ When the agency is the means by which the state is performing an important governmental function, the eleventh amendment bars an action against it. *De-Long Corp. v. Oregon State Highway Commission,* 233 F.Supp. at 14. For example, a school district is not a citizen for diversity purposes but is part of the state government. *Lowe v. Manhattan Beach School District of Los Angeles County,* 222 F.2d 258 (9th Cir.1955).

■ In this case, the legislature established the Fund and appropriated money for it. For the biennium ending in July 1987, the interest earnings from the Fund plus $200,000 of the principal was appropriated to the Commissioner for the payment of wage claims. The Commissioner is an elected official who oversees the Bureau of Labor and Industries (Bureau). ORS 651.-030. She is charged, among other things, with the enforcement of "all laws enacted for the protection of employees." ORS 651.050(3). The Bureau is not a corporation but a department of the state government. ORS 651.020. The Bureau does not contract, or issue bonds, or acquire property independently of the state. The Commissioner does not prosecute legal proceedings independently of the state, but on her own official relation in the name of the state. ORS 652.370(2). There is no indication in the statutory scheme that the activities of the Commission do not create an obligation on the part of the state. The Bureau was created in 1903 and the office of Commissioner established in 1906. Oregon Bluebook 87–88 at 139 (1987). The 1985 legislative addition to the wage claims statutes was merely a grant of further powers and duties to the Commissioner. Although the particular scheme for payment of unpaid wages may be new, it is merely the latest wrinkle in the historic tapestry of labor laws that the state has undertaken to enforce as an undeniably important state function. Under almost all of the *DeLong* criteria, the plaintiff here qualifies as an arm of the state government and not a citizen under the diversity statute by virtue of the sovereign immunity granted under the eleventh amendment.

Under the standards of *Missouri Railroad* as well, the state is not a citizen for diversity because it is the real party in interest. Money collected on judgments pursuant to the wage claims assigned to the state is deposited in the state treasury and is dedicated exclusively to repayment of wage claims. ORS 652.400. The state is obliged to pay on the claims regardless of whether any judgment is collected. Therefore, regardless of the reference to the Account as a "trust," the relief inures to the state alone. In addition, the employee who assigned the wage claim is not a party to the litigation for any purpose. Therefore the judgment effectively operates exclusively in favor of the state.

Defendant has failed to carry its burden of proof that removal was proper and that this court has jurisdiction. For this reason the state's motion to dismiss for lack of diversity jurisdiction is granted, and the case is remanded to state court.

II. *Abstention From Exercise Of Diversity· Jurisdiction.*

Even if I did not grant the state's motion on the basis of lack of diversity jurisdiction, I would grant the motion on the alternative grounds of abstention.

■ Abstention from the exercise of jurisdiction is appropriate only in exceptional circumstances where there is an important countervailing interest served by having the issue decided by a state court. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). When, as in this case, no constitutional issue is raised, abstention is appropriate if the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96

S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). It is enough that the exercise of federal review of the question would be disruptive of state efforts to establish a coherent policy with repect to a matter of substantial public concern. *Id.* A factor to consider is whether the state law is settled, or whether questions bearing on state policy are presented for decision. *Id.* at 815, 96 S.Ct. at 1245. When Texas had established its own elaborate review system for dealing with the geological complexities of oil well drilling, it was appropriate for the federal court to abstain from a suit seeking review of the reasonableness under Texas law of the state commission's permit to drill oil wells. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Similarly, when an unsettled issue of state law over possession of oil rights underlying a railroad right-of-way arose between the railroad and a trustee in bankruptcy, the Court held that the property issue should be determined by the state court rather than the federal court. *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940).

■ In this case the state vigorously contends that an issue of first impression is presented here as to whether some person other than the employer or a successor by purchase, such as a creditor who takes over the business, can be held liable for unpaid wages. The state seeks to hold CIC liable under ORS 652.310(1) for the unpaid wages regardless of its motivation for taking over and continuing to operate the business. The statute defines "employer" as including "any successor to the business of any employer." ORS 652.310(1). Only two cases have construed this statute, and neither involved facts instructive to this case. In *State ex rel. Nilsen v. Ben Jacques Chevrolet, Inc.,* 16 Or.App. 552, 520 P.2d 366 (1974), the issue involved a person who was indisputably a successor to a business by purchase. In *State ex rel. Nilsen v. Lee,* 251 Or. 284, 444 P.2d 548 (1968), the issue never reached the question of a successor in business because the court held that the civil penalty statute, ORS 652.150, was not intended to impose liability on one who merely takes over the management of a business for another.

At oral argument the state revealed that it intends to expand its cause of action against non-employer parties under both the statute and common law theories of unjust enrichment and lender liability. In its brief it argues:

> The state views this case as a very important case because the takeover and continued operation of the business by CIC, a secured lender, and the failure and financial inability of a debtor-employer to meet the final payroll is not an uncommon occurrence.

I conclude that this issue is one of first impression significantly affecting the state's statutory scheme for repayment of wage claims under the newly enacted Wage Securities Fund. It is a matter of substantial public concern and important state policy. The state is attempting to establish a comprehensive and effective approach to wage claims. For these reasons, and as a matter of comity between the federal and state systems, I grant the state's motion to abstain and remand.

### III. *Bankruptcy Jurisdiction.*

Although I have already considered two independent grounds for granting of the state's motion, I also consider the issue of jurisdiction under federal bankruptcy law. On June 23, I withdrew this matter from the bankruptcy court for decision pursuant to 28 U.S.C. § 157(d).

On June 27, I orally granted the state's motion to dismiss Mushroom King as a defendant in this action. Even without the presence of the debtor, CIC, the sole remaining defendant, contends that I have jurisdiction in bankruptcy.

■ Jurisdiction of federal bankruptcy over state law claims can arise either if the state law claims are part of the "core" bankruptcy case or if they are non-core but sufficiently "related" to the bankruptcy case. 28 U.S.C. § 157. Core cases include, *inter alia,* such matters as those effecting the administration of the estate, the allowance or disallowance of claims and

counterclaims against the estate, the validity and priority of liens, and the dischargeability of particular debts. 28 U.S.C. § 157(b)(2). Non-core "related" cases may be heard by the bankruptcy court but that court is limited to findings of fact and proposed rulings and cannot enter final orders without the consent of the parties. *White Motor Corp. v. Citibank N.A.*, 704 F.2d 254, 263 (6th Cir.1983). "Related" cases are not defined by statute, but have been described as:

> adversary cases and controversies which are triable only by Article III courts or state courts.... [They] are traditional state common-law actions not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law.

*In re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984). Further, the relatedness must be real and not too tenuous or hypothetical:

> If an action has a direct and substantive impact on the bankruptcy estate or its administration, then it is related to the bankruptcy case and jurisdiction exists. But if a controversy has only a vague or incidental connection with a pending case, and any impact its resolution may have on the bankruptcy estate is speculative, indirect or incidental, then the matter is unrelated to the bankruptcy case and we would not hear it.

*In re Bowling Green Truss, Inc.*, 53 B.R. 391, 394 (Bankr.W.D.Ky.1985). A state law dispute between two creditors does not come within the jurisdiction of the bankruptcy court unless it is otherwise "impossible to administer completely the bankrupt's estate." *In re Friendship Medical Center, Ltd.*, 710 F.2d 1297, 1302 (7th Cir. 1983). Jurisdiction may exist if there is a link between the disposition of those claims and the treatment of other creditors of the bankruptcy, in that it affects the amount of property available for distribution or the allocation of property among creditors. *In re Xonics, Inc.*, 813 F.2d 127, 132 (7th Cir.1987). The court must determine related case jurisdiction following a case-by-case consideration of the facts of the controversy at hand and those surrounding the entire bankruptcy proceeding. *In re Bowling Green Truss, Inc.*, 53 B.R. at 394. CIC has the burden of proving that bankruptcy jurisdiction exists. *In re Xonics, Inc.*, 813 F.2d at 132.

■ CIC contends that the bankruptcy court has either "core" or "related" jurisdiction over the state law wage claim. CIC has senior perfected liens on virtually all the assets of the Mushroom King estate. The state contends that this is a "no asset" case because CIC's secured interest exceeds the assets of the estate, and that there are also agricultural liens and other secured claims against the estate. If the estate has no assets, then the state's case against CIC cannot have an effect on the estate and there is no bankruptcy jurisdiction. CIC points out that the provisions of the operating order approved by the bankruptcy court give the state assets. Under the operating order, the trustee will make available to the estate a percentage of the proceeds of the liquidation of Mushroom King's assets, providing certain conditions are met. Further, the operating order provides that that amount shall be reduced by any amount that CIC is found liable for to the state in this case.

The state argues that this case will have no net financial impact on the estate because the state law case is in effect a substitute for its claim against the bankruptcy estate. That is, if the state prevails against CIC, it will take judgment against CIC rather than the estate in the same amount. CIC points out that if the state prevails, CIC will recover the full amount of that liability from the estate to the extent of the percentage it made available to the estate under the operating order, whereas the state in its bankruptcy claim against Mushroom King will only share pro rata with other wage claimants. Therefore CIC argues that to the extent that the state prevails, the assets otherwise available for distribution to other creditors will be diminished.

Nevertheless, the state contends that even if there is a theoretical possibility that there may be some money available to the estate for distribution, that possibility is so

speculative and improbable that it is insufficient to confer jurisdiction to the bankruptcy court, regardless of the outcome of this case.

The state contends that CIC and the trustee intended that the provisions of the operating order provide nothing more than their estimate of the estate's administrative expenses under the order Paragraph 21 of the order provides for the estate to receive two percent of the first $4 million of net proceeds from the sale of the collateral held by the estate, and one percent of the net proceeds above $4 million, reduced by, among other items, up to $400,000 paid to discharge or reduce liens or security interests other than those held by CIC. The state contends that there are more than $400,000 in competing liens. It argues that there is no reasonable expectation that there will be any cash available after payment of administrative expenses for distribution to other creditors. Paragraph 23 of the order authorizes an additional reduction by the amount CIC might become liable for in this case. The state argues that, by the bankruptcy court's approval of this maximum credit, the court recognized that in all likelihood there will be no possibility that the payment to the estate would amount to anything more than estimated administrative expenses, and if the state prevailed in this case it would not upset the distribution scheme of the bankruptcy code.

CIC points out that the amount provided for the estate would not be consumed by administrative expenses because most of those expenses will be professional fees, which are provided for elsewhere in the order. CIC argues that if no net proceeds were anticipated from the sale of the collateral, the trustee would simply have abandoned the assets.

It is difficult to determine, when the collateral has not yet been sold, whether there is any substantial likelihood that the state's statutory claim against CIC will affect the the distribution available, if any, to other creditors of the debtor. The bankruptcy court gave notice to potential claimants that no claims should be filed until it is determined that there are assets avail-

able. I hold that CIC has failed to carry its burden of proof that the state's statutory claim is likely to have a direct or substantive impact on the bankruptcy estate or its administration. I find that the impact of this case's resolution on the bankruptcy estate is speculative. *In re Bowling Green Truss, Inc.*, 53 B.R. at 391. Accordingly, for these reasons also I grant the state's motion to dismiss the removed case for lack of jurisdiction in bankruptcy.

IV. *Abstention From Bankruptcy Case.*

Because I have found no jurisdiction in diversity or bankruptcy and because I would abstain even if there were jurisdiction for the reasons already stated, it is unnecessary to consider whether I should abstain either mandatorily under 28 U.S.C. § 1334(c)(2) or in my discretion under 28 U.S.C. § 1334(c)(1).

### DEFENDANT'S MOTION TO TRANSFER VENUE OR TO STAY PROCEEDINGS

Defendant moved to transfer this case to the Bankruptcy Court for the Central District of California, where the bankruptcy case of Mushroom King is pending. Subsequently, on July 21, 1987, the Bankruptcy Court for the Central District of California granted the state's motion to transfer venue to the District of Oregon.

Because I have granted the state's motion to dismiss, I need not decide the defendant's motion to transfer venue or to stay proceedings.

### CONCLUSION

Defendant has failed to carry its burden of proof that removal was proper and that this court has diversity jurisdiction. For this reason the state's motion to dismiss for lack of diversity jurisdiction is granted, and the case is remanded to state court. Even if this court has diversity jurisdiction, I find that the issue in this case is a matter of first impression and a matter of substantial public concern and important state policy, and for that reason also I grant the state's alternative motion to abstain and remand. In addition, I grant the state's

motion to dismiss for lack of bankruptcy jurisdiction because the effects of this case on the bankruptcy estate or its administration are too insubstantial and speculative.

Because I have granted the state's motion to dismiss, I need not decide the defendant's motion to transfer venue or to stay proceedings.