In re Clinton W. MURCHISON, Jr., Debtor.

In re TECON REALTY CORPORATION, Debtor.

Bankruptcy Nos. 385–30266–11, 385–30929–11.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Oct. 24, 1985.

customers of stockbrokers or commodity brokers").

James C. Slaughter, Jonathan B. Skidmore, Fulbright & Jaworski, Houston, Tex., Evelyn H. Biery, Fulbright & Jaworski, San Antonio, Tex., Vince Walkowiak, Fulbright & Jaworski, Dallas, Tex., Larry G. Franceski, Fulbright & Jaworski, Washington, D.C., for Riggs National Bank.

Robert L. Hoffman, Strasburger & Price, Philip I. Palmer, Jr., Richard W. Ward, Palmer, Palmer & Coffee, Dallas, Tex., for the Debtor.

Mark E. MacDonald, Mike Paslay, Johnson & Swanson, Dallas, Tex., for the Creditors' Committee.

David Snodgrass, Gardere & Wynne, Dallas, Tex., for F.D.I.C.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

On 7 February 1985 an involuntary petition in bankruptcy was filed against Clinton W. Murchison Jr. (hereinafter Debtor) by Toronto-Dominion Bank, Citicorp Real Estate, and Kona-Post Corporation. On 27 February 1985 Debtor consented to entry of an order for relief. Shortly thereafter, on 19 August 1985, Tecon Realty Corporation (hereinafter Tecon), a component entity of the extensive Murchison holdings described in greater detail below, filed its own petition for relief under Chapter 11. In June of this year Texas Plaza Partners and Belgian American Investments jointly filed an Application for Approval of Sale of Property, to Determine that Consideration to be Paid is Equivalent Value and to Limit Notice for Hearing (hereinafter the application). The Application alluded to the interrelationships of Debtor, Tecon, Texas Plaza Partners, and other entities, and described the proposed sale by Texas Plaza of certain real estate to Belgian American. The application stated that "Texas Plaza Partners is the owner" of said real estate, and that "Belgian American has taken the position that it will not close the purchase of the property pursuant to the contract without the submission of such transaction for approval by this Court." The application requested that the Court approve the sale, and further requested declaratory relief finding that the proposed price constituted equivalent value.[1] Responses to the application were filed by the Unsecured Creditors' Committee, First Federal Savings of Arkansas, and Allied Bank Interna-

---

1. The Court notes that the proper procedural mechanism for obtaining relief of this nature is an adversary procedure under Bankruptcy Rule 7001.

tional, none of which objected to the sale itself, although all three requested that the proceeds be held in escrow for the benefit of various entities. These parties contemplated a subsequent determination by the Court concerning priority of claims to the funds generated by the sale. Only Riggs National Bank of Washington, D.C. filed an objection. Riggs claimed that Debtor's rights were, at best, nothing more than an equitable claim to a share of the profits of Texas Plaza Partners, or to a share of the assets remaining after satisfaction of the claims of the latter entity's creditors, and that the relationship between Debtor and Texas Plaza Partners, and therefore specific assets held by the partnership, was so tenuous and remote that such assets could not be considered property of the estate. Accordingly, Riggs argued, the Court had no jurisdiction to approve a sale of this land or determine whether adequate consideration had been paid.

On 26 July 1985 a hearing was held on the application, at which time Riggs sought denial of the application or alternatively a continuance. After brief introductory remarks on the record, a conference was held in chambers. After extensive discussion, it was determined by the Court and those present that the interests of all concerned would best be served by approving the sale and holding the net proceeds in escrow pending a final determination of entitlement to the funds. Riggs agreed to withdraw its objection to the Court's jurisdiction until a new hearing could be scheduled.[2] An order was entered approving the sale, finding the price to be equivalent value, and freezing the net proceeds pending the outcome of the final hearing, which was scheduled for 26 August 1985.

The property was sold, and the proceeds were held in escrow pursuant to the terms of the order.[3] On 26 August, prior to the scheduled hearing, Riggs filed a motion for continuance. During the thirty day interim period, another of the Murchison-related entities, TXSO, had filed a petition for relief under Chapter 11. Riggs charged that this filing was a transparent maneuver to circumvent the jurisdictional argument it had advanced and "withdrawn" at the July hearing. Riggs claimed that this unanticipated development required it to reevaluate and possibly reformulate its strategy. After a conference in chambers, it was determined that a continuance should be granted, and the matter was reset for 19 November 1985.

On 27 September 1985, Riggs filed a motion to dismiss these matters in the Murchison and Tecon cases, on the basis that TXSO, as a limited partner in the partnership holding 50% of Texas Plaza Partners, was closest to the transaction and would have a claim to the proceeds which would prime that of either Tecon or Debtor.[4] Riggs also filed a motion to dismiss the TXSO case altogether. A hearing on these motions was held on 4 October 1985, at which time the Court expressed its misgivings as to the propriety of the order approving the sale, and asked counsel for the applicants, the Creditors' Committee, Debtor, and other interested parties to again address the jurisdictional question. After considering the pleadings in the various cases and the argument of counsel, the Court determined that the order of 26 July was void, not voidable, for lack of jurisdiction. That order was accordingly set aside,

---

**2.** At the hearing on 4 October 1985, Riggs emphasized that it had withdrawn its objection but that it never intended to consent to the Court's jurisdiction. Aside from the irrelevance of consent to the proper exercise of jurisdiction, the Court finds this ploy disingenuous at best, and regards it as nothing more than a game of semantics played only to allow Riggs to hedge its bet as to the ultimate disposition of the proceeds.

**3.** At the 4 October hearing, all counsel were confused as to the location of these proceeds. Counsel for the applicants was equally uncertain as to their location, but indicated he could ascertain where they were being held. The Court has since been apprised that counsel has not only located the funds but has interpled them in state court.

**4.** Indeed, because they were "upstream" from TXSO, their claims would be derivative of the claim advanced by TXSO.

and the application was retroactively denied, for the reasons stated herein.[5]

▮ The Murchison cases have been singular not only in the extent of their proliferation but in the degree of complexity and interaction as well. It appears from the pleadings in this and the related cases that the relationship among the various entities controlled or owned in whole or in part by Debtor or his family approaches, for want of a better term, the incestuous. It is only now, several months after the petition, that the accountants for the estates can define with any degree of confidence the extent and character of the Murchison holdings. It is just this sort of complexity which has resulted in the confusion surrounding the application to sell, and the subsequent chain of events, in question here. Upon careful evaluation of the facts presented in the application and the responsive pleadings, including the objection to jurisdiction "withdrawn" by Riggs, it is clear that the specific issue—the most significant issue— is the threshold question of whether this Court has jurisdiction over the sale of property owned by a *nondebtor entity* in which a debtor has a remote and fractional partnership or shareholder interest. Phrased differently, and perhaps more in keeping with the true purpose of the application, the question becomes whether this, a court of limited jurisdiction, should extend itself beyond Congressionally defined parameters for no reason other than to accomodate and placate a purchaser of property, or a title company involved in the transaction, whose misperception of the effect and consequences of bankruptcy on a proposed sale produces an uncomfortable degree of anxiety and insecurity. It should be noted by all counsel confronted with circumstances similar to those present here that this Court exists to adjudicate disputes arising in conjunction with the administration of an estate in bankruptcy between parties-in-interest and concerning property of the estate and claims against it. It is not the purpose of this Court to assuage the fears and calm the apprehensions of those who seek to sell or buy assets held by an entity which, albeit related to a debtor, is not itself in bankruptcy.

Although the order approving the sale was entered months ago, and objections to the ability of the Court to enter said order have been "withdrawn", it is clear that this Court retains the ability, indeed, the duty, to examine its jurisdiction over a matter at any time, *sua sponte. Matter of Kutner,* 656 F.2d 1107 (5th Cir.1981); *In re Maine Marine Corporation,* 20 B.R. 426 (Bkrtcy.D. Me.1982); *In re Curtina,* 15 B.R. 993 (Bkrtcy.S.D.N.Y.1981). That the parties have agreed to jurisdiction, whether by stipulation or "withdrawal", is immaterial. *American Fire and Casualty Company v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

Because this case was filed in early 1985, the provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 must govern. This statute, enacted amid the turmoil following the Supreme Court's decision in *Northern Pipeline Construction Company v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), attempts to curtail the wide latitude granted the bankruptcy courts under the Code. It states, in pertinent part,

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11......

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, *of the debtor* as of the commencement of such case, and of the estate.

---

**5.** This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 9014 and 7052.

28 U.S.C. 1334 (emphasis added). Pursuant to 28 U.S.C. 157(a), the court may then provide for automatic reference of the case and any proceedings therein to the bankruptcy court. The jurisdiction of the bankruptcy court is then defined, and matters brought before the latter forum are placed into one of three categories: core proceedings, under § 157(b)(2); noncore "related" proceedings under § 157(c); and proceedings which fit neither of the above, and which this Court will designate as noncore unrelated cases.

Core proceedings are defined by a long, and at times ambiguous, list set forth in § 157(b)(2). Phrases such as "matters concerning the administration of the estate", § 157(b)(2)(A), "orders approving the sale of property", § 157(b)(2)(N), and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship", § 157(b)(2)(O), are so broad as to appear to invite the exercise of jurisdiction by the bankruptcy court over any matter, regardless of how tangential, which might somehow impact upon the debtor's progress from petition to plan or liquidation. It must also be understood, however, that § 157(b)(2) does not exist in a vacuum; it must be read in a manner consistent with the overall jurisdictional grant of § 1334. That provision, as quoted above, speaks in terms of proceedings arising under, arising in, or related to a case under title 11. It speaks also of jurisdiction over property of the estate. This application was apparently brought under the premise that the Court had jurisdiction under Code section 363(b)(1), which authorizes the trustee to sell "property of the estate". That term is in turn defined by § 541(a)(1), which states, in pertinent part, that "property of the estate" comprises "all legal or equitable interests of the debtor in property as of the commencement of the case". As explained below, Debtor had no interests in the particular property at issue; rather, he had an equitable interest in the entities which owned other entities, and so on, which ultimately owned an equitable interest in the partnership holding title to the property.

Because the criterion of § 541(a)(1) has not been satisfied, § 363(b)(1) cannot apply. There being no authorization in § 363, or elsewhere, for a debtor in possession or trustee to sell property in which the estate has no interest, it must be concluded that the application is not based upon any provision in the Bankruptcy Code. This application is not, therefore, a case or proceeding arising in the Code. It is also clear that references in § 157(b)(2)(N) to property" must be construed to include only property *of the estate*. Indeed, this limitation is explicitly set forth in the residual category of core proceedings, § 157(b)(2)(O), which limits bankruptcy jurisdiction to "proceedings affecting the liquidation of assets *of the estate*". Clearly, then, a proceeding to dispose of property which is not an asset of the estate cannot be considered a core matter.

In the course of the hearing held on 4 October, counsel for the creditors' committee alluded to the application as a "related" matter on which the Court could rule. To be sure, one of the nondebtor entities involved in the transaction at issue is related, in the corporate sense and through a number of intermediate corporate relatives, to Debtor and Tecon. "Related", however, in the context of bankruptcy jurisdiction, has become a word of art. While it is not defined in the statute, at least one appellate court has attempted to describe the kinds of proceedings encompassed by the term "related".

> "Related proceedings ... are [those] adversary cases and controversies which are triable only by Article III Courts or State Courts ... [they] are traditional state common-law actions, not made subject to a federal rule of decision, and relating only peripherally to an adjudication of bankruptcy under federal law..."

*Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984). In short, they are they types of cases which present the same sorts of issues discussed in *Marathon*. The application at issue here cannot be so characterized. It seeks no vindication of a state created right of or

against the debtors. To label this application as a "related" proceeding, within the jurisdictional context, is simply inappropriate.

Before explaining the Court's determination that the subject of the application was not property of the estate, it is necessary to provide an admittedly simplistic description of the relationship of the entities involved. The property to be sold was, according to the terms of the application, "owned" by Texas Plaza Partners. Texas Plaza Partners is a partnership owned by TRC Partners, Ltd. and MEPC Stadium Properties, Inc. in equal shares. TRC thus owns fifty percent of the entity which owns the property. TRC is itself a limited partnership in which Texas Plaza Development Corporation is the general partner, owning eighty percent, and in which TXSO is the limited partner, owning ten percent. TXSO thus owns ten percent of the partnership that owns fifty percent of the entity which owns the property. TXSO is a wholly owned corporation whose stock is held by Tescor, Inc. Tescor thus owns one hundred percent of a separate entity that owns ten percent of the partnership which owns fifty percent of the entity that owns the property. Tescor is a wholly owned subsidiary of Corland Corporation. Corland thus owns one hundred percent of Tescor, which owns one hundred percent of TXSO, which owns ten percent of TRC Partners, which owns fifty percent of Texas Plaza Partners, which owns the property. Corland is in turn owned by Topcor, which in turn is owned by Debtor. Without intending to belabor the point, but merely to illustrate the remote relationship between Debtor and the entity holding the title to the property, the sequence of ownership is as follows: Debtor owns 100% of Topcor, which owns 100% of Corland, which owns 100% of Tescor, which owns 100% of TXSO, which owns 10% of TRC Partners, which owns

50% of Texas Plaza Partners, which is the entity holding title.[6] Having examined this chain of ownership, it is clear that an application for the approval by this Court of the sale in question based upon an assertion that Debtor might have an interest in the subject property borders on the absurd.

A similarly tenuous degree of ownership exists in the Tecon case. Texas Plaza Development Corporation (not to be confused with Texas Plaza Partners, the owner of the real estate) owns eighty percent of TRC Partners. Tecon Realty Corporation owns one hundred percent of Texas Plaza Development Corporation. Tecon is itself a subsidiary of TSI Holdings, Inc., of which Tece Corporation owns eighty percent. Debtor owns twenty percent of Tece Corporation.[7]

Virtually all of the parties, with the exception of the United States Trustee and the Federal Deposit Insurance Corporation, with the lukewarm support of Riggs Bank, have asserted the jurisdiction of this Court to pass upon the disposition of the property in question. None of these assertions have been terribly specific, resembling uncertain feelings of foreboding rather than clear and precise applications of legal principles. Much of the discussion concerning jurisdiction may be classified as conclusory statements as to the benefit that *might* accrue to these estates, and similarly vague allusions to the dire consequences that *might* ensure *if* the shells should be collapsed and an alter ego decree entered. Although this case appears, at first glance, to beg for substantive consolidation, the Court notes that no such determination has been made. To base jurisdiction on this possibility transcends the concept of jurisdiction by consent and becomes nothing more than jurisdiction by speculation. There being no alter ego determination, it cannot be disputed that Texas Plaza Partners held title to the

---

**6.** The Court also notes that Corland and TXSO are themselves Chapter 11 debtors before this Court. Debtor's rights to any distribution of proceeds from this sale therefore depend on the satisfaction of 100% of the valid claims in each of those estates.

**7.** These elaborate chains have been summarized in the chart attached hereto as an appendix.

property[8], and that neither Debtor could claim anything more than the right to an equitable distribution of profits (or of assets after dissolution and winding up), and then only after the claims of creditors have been satisfied. This is true as well for each intervening entity. Moreover, as to those intervening entities which have taken the plunge into Chapter 11, any claim of the debtors would clearly be subordinate to all other claims against those estates. Unless Debtor, or his creditors, can assert with a straight face that each of those intervening entities is solvent or will become so, and will thereby offer the creditors of each intervening estate a 100% dividend, leaving a surplus for distribution to insiders or equity holders, this Court fails to see how there could exist any reasonable basis for suggesting that the estates of these Debtors will benefit from the sale. The exercise of jurisdiction by this Court over property of nondebtor entities, where the possibility of benefit to these estates accruing from the sale is so remote, is plainly improper. *See In re Dr. C. Huff Company, Inc.*, 44 B.R. 129 (Bkrtcy.W.D. Ky.1984); *In re McKinney*, 45 B.R. 790 (Bkrtcy.W.D.Ky.1985). As one court has stated,

> A fundamental principle of jurisdiction is that judgment on an issue is binding only as to the parties or property before the court. A court has no jurisdiction to issue a judgment unless either in rem or in personam jurisdiction has been invoked over the property or persons the judgment concerns. Neither the rights nor the liabilities of a third person not a party to the lawsuit can be adjudicated in that lawsuit. Moreover, if the jurisdiction is in rem, the judgment can only affect property over which jurisdiction has properly been invoked.

*In re A.J. MacKay Company*, 13 B.C.D. 557, 50 B.R. 756 (D.Utah 1985).

It is, as counsel have grudgingly admitted, elemental law in Texas that specific assets of a partnership are not owned by a partner individually.

> The joint effects of a partnership, including realty, belong to the firm, and not to the partners, and a partner has no individual property in any specific assets of the firm, and no right during the existence of the partnership to the exclusive possession of any of its property. *The interest of each partner is his share in the surplus after the partnership debts are paid*, and after partnership accounts are settled and the rights of the partners inter se are adjusted.

*Miller v. Howell*, 234 S.W.2d 925, 930 (Tex. Civ.App.-Ft. Worth 1950, no writ). *See also Littleton v. Littleton*, 341 S.W.2d 484, 488 (Tex.Civ.App.-Houston 1960, writ ref'd n.r.e.); *Humphrey v. Bullock*, 666 S.W.2d 586, 590 (Tex.App.-Austin 1984, writ ref'd n.r.e.). Bankruptcy courts have consistently adopted these principles. *See, e.g., Matter of Minton Group*, 46 B.R. 222, 225 (S.D.N.Y.1985); *In re Venture Properties, Inc.*, 37 B.R. 175, 176 (Bkrtcy.D.N.H.1984); *In re Fulton*, 43 B.R. 273, 276 (Bkrtcy.M.D.Tenn.1984). Assuming, strictly *arguendo*, that the Court could ignore the intervening corporations, so that Debtor stepped into the shoes of and became for purposes of the application one and the same with TRC Partners Ltd., it is clear that this Court would nonetheless exceed its jurisdiction if it were to approve a sale of property held by Texas Plaza Partners. *See In re Manning*, 37 B.R. 755 (Bkrtcy.D. Colo.1984); *In re Dreske*, 25 B.R. 268 (Bkrtcy.D.Wis.1982).

Of course, Debtor has not been determined to be one and the same with TRC Partners, Ltd. On both sides of the chain depicted in the appendix there are four intervening corporations, the first owned by the next, and two entities ultimately owned in whole or in part by Debtor. Even if the court were to accept the proposition that a trustee of a partner could obtain the Court's approval of the sale of a specific partnership asset, the intervening corpora-

---

8. Because this was alleged in the application, and never challenged in the course of the vari-

ous debates and conferences, the Court accepts this as true.

tions, each separate and distinct entities until adjudged otherwise, would preclude this Court from approving the sale of this property in connection with these debtors' estates. Even if the Court found, for example, that Texas Plaza Development Corporation had a property right in a specific asset of TRC Partners, in which it owns an eighty percent interest, that property right could not travel upstream to Tecon Realty Corporation. Tecon is a mere shareholder in Texas Plaza Development Corporation, and as such, it cannot claim a property right in specific assets of a subsidiary. "It is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that title to corporate property is vested in the corporation and not in the owners of the corporate stock." *Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 318 (5th Cir.1984); *Gossett v. State,* 417 S.W.2d 730, 735 (Tex.Civ.App.-Eastland 1967, writ ref'd n.r.e.). Even where, as here, one hundred percent of a subsidiary's stock is owned by the shareholder in question, that shareholder has not acquired, and has no property interest in, specific assets of the subsidiary. *Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201 (5th Cir.1980), *cert. den.* 450 U.S. 975, 101 S.Ct. 1506, 67 L.Ed.2d 809 (1981); *Evans v. General Insurance Company of America,* 390 S.W.2d 818, 822 (Tex.Civ.App. Dallas 1965, no writ); *Commonwealth of Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216 (1943); *In re Boitnott,* 4 B.R. 119 (Bkrtcy.W.D.Va. 1980); *In re Linderman,* 20 B.R. 826, 828 (Bkrtcy.W.D.Wash.1982); *In re Pearl-Wick Corporation,* 26 B.R. 604, 607 (S.D.N.Y. 1982).

For example, it has long been held in this circuit that "a corporation's acquisition of an asset does not constitute an acquisition by the corporate shareholders, absent some actual or bookkeeping transfer of the asset from one entity to the other." *Engel v. Teleprompter Corporation,* 703 F.2d 127, 131 (5th Cir.1983). Similarly, the assets or income of a corporation cannot be imputed to a shareholder absent some actual transfer. *City of Woodway v. United States,* 681 F.2d 975, 980 (5th Cir.1982); *Matter of Sandefer,* 47 B.R. 133 (Bkrtcy.N.D.Ala. 1985). How, then, can it be said that the *sale* of an asset by a corporation is imputed to the shareholder? To the extent the property at issue here was an asset of Texas Plaza Development Corporation, how can it be said that the property was an asset of Tecon Realty Corporation, a mere shareholder? The clear answer is that the property in question was not an asset of either Debtor. Consequently, this Court had no authority to approve the sale. This Court is and should be completely indifferent to the affairs of nondebtors involving assets which are not property of the estate. The possibility of an equitable distribution of profits to a debtor-shareholder sometime in the future does not justify the abrogation of this principle. If counsel are truly concerned about the consequences of a future alter ego determination, it may behoove them to join the issue and put the question to rest. Until they do so, this Court cannot find jurisdiction over the subject property. *In re Davis,* 16 B.R. 553 (Bkrtcy.S.D.Fla.1981).

CONCLUSION

■ One may not bring a proceeding in a bankruptcy court to dispose of assets which are not property of any estate and which are being sold and purchased by nondebtors, simply because the selling entity is a corporate relative of a debtor. The entity holding title to the property in question here, and the entity seeking to buy that property, are both nondebtors. The property is not an asset of either the Murchison or the Tecon estate. Accordingly, any attempt by this Court to exercise jurisdiction over that property, or approve the sale thereof, is not voidable, but void. The order approving the sale will therefore be set aside, and the application will be dismissed for lack of jurisdiction.[9]

---

9. Counsel should note that the Court is making no determination or disposition whatsoever as to issues that have been, or may be, presented and joined in the recently filed TXSO bankruptcy.