**In re INCOR, INC., Debtor.**

**The FIRST NATIONAL BANK OF MARYLAND, Appellant,**

**v.**

**UNITED STATES WALL CORPORATION,**
**Appellee.**

No. 87–5–1292.

Civ. A. No. HAR–89–2033.

United States District Court,
D. Maryland.

March 16, 1990.

William L. Hallam, Paul J. Cohen, Gebhart & Smith, Baltimore, Md., for appellant.

No appearance for appellee.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Currently before this Court is the appeal of The First National Bank of Maryland ("FNB") from a decision of the Honorable James F. Schneider, United States Bankruptcy Court for the District of Maryland, dismissing appellant's civil case from the bankruptcy court for lack of jurisdiction.

Appellee United States Wall Corporation ("Wall") has chosen not to respond to this appeal. Jurisdiction with this Court is afforded by 28 U.S.C. § 158(a).

### FACTS

InCor, Inc., filed a voluntary Chapter 11 bankruptcy petition with this Court on June 10, 1987 (Case No. 87–5–1292). At the time of its petition, InCor was a Maryland corporation engaged in the business of owning and operating a steel mill located at 4601 North Point Boulevard, Baltimore, Maryland. It manufactured drywall studs, structural grade steel studs, wire mesh, and other related products.

FNB is the beneficiary of a deed of trust dated June 30, 1986, constituting a first lien on InCor's real property. This trust secured payment on obligations incurred by InCor under a promissory note ("IRB Note") in the original amount of $5,500,-000, and a demand "Business Purpose Promissory Note" in the original amount of $1,500,000. Both notes are dated June 30, 1986. FNB also holds a first perfected security interest in InCor's accounts receivable, intangibles, and all tangible property, including but not limited to, equipment, inventory, and fixtures, to secure payment of InCor's obligations under the Business Purpose Promissory Note. FNB obtained a second perfected security interest on these same items to secure payment of the IRB Note.

Simultaneously filed with the Chapter 11 petition was a "Consent Order Authorizing Debtor to Use Cash Collateral and to Obtain Post–Petition Financing." Under the Order, InCor and FNB both stated that FNB was InCor's only secured creditor.[1] InCor and FNB further agreed that InCor would be permitted to use its cash collateral and that FNB would advance post-petition financing in accordance with certain conditions contained in the consent order. The conditions bestowed preferred status to any post-petition money borrowed by InCor from FNB.

---

1. One hundred thirty six (136) separate claims have been filed against the InCor estate. Of these, FNB's claim of $5,535,265.21 is the largest and only secured claim.

On January 29, 1988, InCor closed because it could no longer properly fund its manufacturing operations. A month later, FNB filed a motion with the Bankruptcy Court seeking emergency relief from the automatic stay to collect InCor's accounts receivable and apply them against InCor's outstanding secured obligations. On March 10, 1988, the bankruptcy court granted FNB's motion for cause, finding a lack of adequate protection pursuant to 11 U.S.C. § 362(d)(1).

By order of the bankruptcy court dated April 28, 1988, all real and personal property of Incor was sold outside of Chapter 11 to Dale Industries, Inc., for $2,225,000. An appeal on this sale was later dismissed by the district court.

On October 11, 1988, FNB filed the instant two-count complaint against United States Wall Corporation to recover accounts receivable owed to InCor. Count 1 asks for recovery of $23,939.43 allegedly owed to InCor, plus interest and costs, for accounts receivable owed prior to the filing of the bankruptcy petition on June 10, 1987. Count 2 seeks recovery of post-petition accounts receivable in the amount of $45,181.01, plus interest and costs. Wall disputes the amount owed.[2]

Wall filed a motion to dismiss alleging a lack of both personal jurisdiction over the Defendant and subject matter jurisdiction over the collection of the accounts receivable. Wall further asserted that the complaint is a "non-core" proceeding under 28 U.S.C. § 157(c)(1). FNB filed an opposition to this motion.[3]

The bankruptcy court granted Wall's motion on January 4, 1989 and dismissed the complaint. Soon thereafter, FNB filed a motion for reconsideration. In response,

Wall filed an "Affidavit in Support of Dismissal for Want of Jurisdiction." In a memorandum opinion dated June 7, 1989, the bankruptcy court denied FNB's motion for reconsideration. 100 B.R. 790. After a careful analysis of the case law, the Court found that the bankrupt estate lost all interest in the accounts receivable when the court modified the automatic stay to allow FNB to proceed. The bankruptcy court further reasoned that the outcome of this case could in no way affect the underlying bankruptcy. Therefore, as a non-core, unrelated proceeding, the bankruptcy court held that it lacked subject matter jurisdiction.[4] This appeal ensued.

### I.

Under 11 U.S.C. § 362, a bankrupt estate is given an automatic stay against the enforcement of liens against property of the estate. This becomes effective immediately upon the filing of a bankruptcy petition. FNB argues that under federal bankruptcy law and Article 9 of the Uniform Commercial Code, the lifting of the automatic stay by the bankruptcy court allowing it to proceed on its own against the property did not in itself take the property out of the bankrupt estate. This Court is unpersuaded by these arguments.

### A.  11 U.S.C. § 362.

As authority for its contention that the accounts receivable remained part of the estate, FNB cites a case out of the Eastern District of Michigan which states that accounts receivable remain a part of the estate "until either the automatic stay of 11 U.S.C. § 362 is lifted and [the secured creditor] obtains the receivables under applicable non-bankruptcy law, or until [the se-

---

**2.** Ten days after the filing of this complaint, the trustees of the bankrupt estate filed a motion to convert the case to a proceeding under Chapter 7 due to Incor's failure to pay quarterly fees required under Chapter 11. This motion was granted by the bankruptcy court on January 25, 1989.

**3.** FNB opposed the motion claiming that the bankruptcy court had full jurisdiction over both the defendant and the controversy. It further stated that Count 2 of the complaint was a core

matter under 28 U.S.C. § 157(b)(2). FNB also claims that Wall's motion was untimely and should be denied as it was filed during the pendency of a motion for default judgment filed by FNB.

**4.** The bankruptcy court did not reach Walls contention that the court also lacked personal jurisdiction, although it did note that this district might have jurisdiction based upon diversity of citizenship.

cured creditor] obtains them pursuant to a provision to that effect in a reorganization plan." *Maislin Industries, Inc. v. A.J. Hollander Co.,* 69 B.R. 771, 775 (E.D.Mich. 1986).

In *Maislin,* the debtor itself went after the accounts receivable as an integral part of the reorganization plan. The *Maislin* Court ruling hinged on the fact that "no post-petition event has undermined [the] property interest [in the accounts receivable]." *Id.* Therefore, Maislin's accounts receivable were still a part of the estate. Maislin had an absolute duty to administer the receivables in the best interest of its creditors. The bankruptcy court still maintained jurisdiction.

This is factually distinguishable from the case presently before this Court. Here, FNB has been granted leave to proceed against Wall personally. The accounts receivable is not an integral part of the reorganization (now liquidation) plan. FNB is in a different situation than that faced by the secured creditor in *Maislin.* When FNB asked for, and was granted, leave to proceed against Wall, the estate lost all interest in the property. InCor no longer had any obligation to administer the receivables for the benefit of FNB, nor could InCor later redeem the secured property. A post-petition event, the lifting of the stay, destroyed InCor's property interest in the accounts receivable. The lifting of the stay was essentially equivalent to an abandonment of the property. InCor had lost all interest in the accounts receivable. Therefore, the bankruptcy court could not take jurisdiction over the property under the theory that it is a part of the estate. *Cf. In re Xonics,* 813 F.2d 127 (7th Cir. 1987); *In re Tulsa Associates,* 93 B.R. 419, 423 (Bankr.W.D.Pa.1988); *In re Interstate Motor Freight System, IMFS, Inc.,* 86 B.R. 500, 505 (Bankr.W.D.Mich.1988); *In re Taslis,* 41 B.R. 47, 49 (Bankr.D.Mass.1984). To hold otherwise would simply facilitate a fictional relationship between InCor and the property for the benefit of FNB.

**B. U.C.C. Article 9.**

FNB also cites U.C.C. § 9–502(2) in support of its position that the accounts receivable remained a part of the estate after the stay was lifted. The Court finds FNB's arguments unpersuasive.

Under § 9–502(2) property collected by a secured creditor is funneled through the debtor in default. This assures that any surplus value of the property which is being collected goes to the party in default (the debtor) and not to the secured creditor. However, there is no potential of any surplus from the collection of InCor's accounts receivable as there is clearly no possibility that FNB can collect more than the value of its security interest from Wall. Therefore there is no reason to fictitiously funnel collection through InCor's estate under § 9–502(2).

Likewise, the policy reasons surrounding U.C.C. § 9–112, also cited by FNB, do not apply in this litigation. The bankruptcy court rightfully did not take jurisdiction over the action based upon these and other U.C.C. Article 9 provisions as it is clear that there could be no surplus collateral from the collection of the debt.

### II.

In 1982, the Supreme Court declared the broad grant of jurisdiction powers conferred by Congress upon the bankruptcy courts unconstitutional. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Supreme Court has since explained that *Northern Pipeline* holds that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985). *See also Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

In reaction to the *Marathon* ruling, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333. The amend-

**216**

ments made two major changes in federal bankruptcy jurisdiction. First, the district courts were given original and exclusive jurisdiction over all cases arising under Title 11. 28 U.S.C. §§ 1334(a) and (b). The district court then has the discretion to refer proceedings to the bankruptcy court. 28 U.S.C. § 157(a). Second, Congress divided bankruptcy jurisdiction into "core" and "non-core" proceedings in order to cure the deficiencies of the old jurisdictional model. 28 U.S.C. § 157.

Core proceedings are those which are "integral to the core bankruptcy function of restructuring debtor-creditor rights." This includes "all necessary aspects of the bankruptcy case." 130 Cong.Rec. E 1109 (daily ed. March 20, 1984) (Rep. Kastenmeier). A non-exhaustive list of proceedings defined as core is found in 28 U.S.C. § 157(b)(2). A bankruptcy court grants final orders on "core" proceedings referred to it by the district court. 28 U.S.C. § 157(b).

Non-core matters are claims "concerned only with state law issues that [do] not arise in the core bankruptcy function of adjusting debtor-creditor rights." 130 Cong.Rec. H 1848 (daily ed. March 21, 1984). In matters deemed to be non-core, the bankruptcy court is allowed only to submit proposed findings of fact and conclusions of law to the district court.[5] 28 U.S.C. § 157(c)(1). The district court gives *de novo* review to non-core determinations of the bankruptcy court and enters final orders. 28 U.S.C. § 157(c)(2).

FNB claims that its post-petition financing issued to InCor should be considered a core matter. Thus, FNB concludes, the bankruptcy court must exercise jurisdiction over its action against Wall.

█ Normally, an action for the collection of a post-petition contract is considered a core matter. *See, e.g., In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir. 1987); *Edgcomb Metals Co. v. Eastmet Corp.*, 89 B.R. 546 (D.Md.1988); *In re Epi-*

*Scan, Inc.*, 71 B.R. 975 (Bankr.D.N.J.1987); *In re L.A. Clarke and Son, Inc.*, 51 B.R. 31 (Bankr.D.D.C.1985). However, a proceeding is not a core matter if it does not impact upon property of the estate. *In re Murchison*, 54 B.R. 721, 725 (Bankr.N.D. Tex.1985); *Zweygardt v. Colorado National Bank of Denver*, 52 B.R. 229, 232 (Bankr.D.Colo.1985); *Cf. Xonics*, 813 F.2d at 131–32.

The connection of the accounts receivable to the estate is tenuous at best. While the property was once a part of the estate, the accounts essentially were divorced from the estate when the bankruptcy court granted FNB direct leave to proceed. In addition, bankruptcy court has made a specific finding that collection of the money by FNB will in no way impact upon the other creditors. Memorandum Opinion at 21–22. This action is little more than a third party dispute concerning property no longer belonging to the estate. *See Xonics*, 813 F.2d at 131–32; *In re Marine Pollution Service, Inc.*, 88 B.R. 588, 596 (S.D.N.Y.), *rev'd on other grounds*, 857 F.2d 91 (2d Cir.1988); *In re Denalco Corp.*, 57 B.R. 392, 394–96 (N.D.Ill.1986); *In re Central Ice Cream Co.*, 82 B.R. 933, 936–37 (Bankr. N.D.Ill.1987). *Cf. In re Terracor*, 86 B.R. 671, 678–80 (D.Utah 1988). Furthermore, there is nothing in this dispute which arises from bankruptcy law. This is a suit to enforce a state created right involving property no longer a part of the estate. Bankruptcy laws are not involved. *See Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *In re American Energy, Inc.*, 50 B.R. 175, 178 (Bankr.D.N.D.1985); *In re Dr. C. Huff Co., Inc.*, 44 B.R. 129, 134 (Bankr.W.D.Ky.1984). Under these circumstances, this Court agrees with the conclusion of the bankruptcy court that this action to collect the accounts receivable cannot be considered a core matter. *See also, In re Aristera*, 65 B.R. 928, 930–31 (Bankr.N.D.Tex.1986); *In re Bowling Green Truss, Inc.*, 53 B.R. 391, 393 (Bankr.

---

5. The bankruptcy court may enter final judgment in non-core matters with the consent of the parties. 28 U.S.C. § 157(c)(2).

W.D.Ky.1985).[6]

### III.

■ After reviewing the facts and case law, the bankruptcy court concluded that it could not exercise jurisdiction over this action because it "has no independent subject matter jurisdiction to deal with matters that do not affect the estate." The bankruptcy court reasoned that when FNB was granted leave to proceed against the accounts receivable, the estate lost all interest in the property and so the estate could not be affected by the outcome of the litigation. Therefore, FNB's action against Wall was found to be unrelated to the bankrupt estate.

■ It is widely accepted that an action is related to a bankruptcy case if:

the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor v. Higgins,* 743 F.2d 984 (3rd Cir. 1984).[7] *See also, In re Majestic Energy Corporation,* 835 F.2d 87, 90 (5th Cir. 1988); *Wood,* 825 F.2d at 93; *Xonics,* 813 F.2d at 132; *In re Salem Mortgage Co.,* 783 F.2d 626, 633–34 (6th Cir.1986); *In re Bobroff,* 766 F.2d 797, 802 (3rd Cir.1985). Thus, the bankruptcy court will have 'related to' jurisdiction even though the debtor is not a party and the property at issue does not belong to the debtor so as long as the disposition of the property impacts upon the handling and administration of the bankrupt estate.

Under the terms of the contracts between the parties, FNB issued pre-petition credit in the amount of $7,000,000 to InCor. This credit is secured by a perfected lien upon InCor's real property, tangible property, intangibles, and accounts receivable. The bankruptcy court order of June 11, 1987, allowing post-petition financing also gave FNB a security interest in InCor's property. FNB is first in line to receive assets from the estate as the only secured creditor of both pre- and post-petition debts.

FNB has pending claims totalling over $5.5 million upon the estate.[8] Of this amount, FNB's claimed security interest in the accounts receivable is approximately $24,000 in pre-petition financing and $45,000 in post-petition financing. Wall disputes this amount. It is obvious that the vast majority of debt which the estate owes FNB is unsecured by the accounts receivable.

It is apparent that FNB will have to join the unsecured creditors to receive the balance of its unsecured debt from the estate liquidation. If the outcome of the litigation between FNB and Wall could conceivably alter the debt amount which FNB will have to seek on an unsecured basis, this litigation would have a ripple effect among all creditors and have an effect upon the administration of the estate. The bankruptcy court would then have jurisdiction over this action between FNB and Wall in its entirety as it would impact both the debtor's liabilities and the administration of the estate. *Harold Brown Co. v. Reliance Insurance Co.,* 66 B.R. 480, 481–82 (E.D.Pa. 1986); *In the Matter of L.B. Trucking,*

---

**6.** FNB cites *In re Lewis Carpet Mills, Inc.,* 15 B.R. 172 (Bankr.N.D.Ga.1981) to support its claim that a creditor's action to recover accounts receivable is a core matter. However, as FNB itself points out, *Lewis* was decided prior to the enactment of the core/non-core distinction. The *Lewis* court accepted jurisdiction over the dispute, finding that the action was 'related to' the bankruptcy. *Id.,* 15 B.R. at 173.

**7.** The bankruptcy court applied the *Pacor* test in its decision, stating that although it was decided prior to the new jurisdictional rules relating to bankruptcy, it "retains its authority on the meaning of 'related to' jurisdiction based upon sound judicial reasoning and common sense." 100 B.R. 796.

**8.** The Court does not have precise figures of the breakdown of this amount between pre- and post-petition debt.

*Inc.,* 75 B.R. 88, 90–91 (Bankr.D.Del.1987); *In re Showcase Natural Casing Co., Inc.,* 54 B.R. 138 (Bankr.S.D.Ohio 1984); *In re Lewis Carpet Mills, Inc.,* 15 B.R. 172, 173 (Bankr.N.D.Ga.1981). *See also Xonics,* 813 F.2d at 132; *State ex rel. Roberts v. Mushroom King, Inc.,* 77 B.R. 813, 820 (D.Or.1987).

However, the bankruptcy court has found that "[t]he recovery of receivables proceeds by the Bank will not affect the recoveries of other creditors." 100 B.R. at 799. Therefore, it its obvious that the payment of the security interest to FNB will have a speculative or insignificant effect upon the administration of the estate. Accordingly, 'related to' jurisdiction does not exist. *See National City Bank v. Coopers and Lybrand,* 802 F.2d 990, 993–94 (8th Cir.1986); *Hoffman v. Roberto,* 85 B.R. 417 (W.D.Mich.1988); *Roberts,* 77 B.R. at 821; *In re Chargit,* 81 B.R. 243, 246–47 (Bankr. S.D.N.Y.1987); *Murchison,* 54 B.R. at 727; *Bowling Green,* 53 B.R. at 394.

This Court finds that FNB has demonstrated no basis on which the bankruptcy court can properly take jurisdiction over this matter. For the reasons stated, the ruling of the bankruptcy court is affirmed. It will be so ordered.