### In re FURLEY'S TRANSPORT, INC. Debtor.

Zvi Guttman, Chapter 7 Trustee,

v.

CitiCapital Commercial Corporation f/k/a Associates Commercial Corporation.

Bankruptcy No. 99–66900–SD.
CIV.No. L–01–2963.

United States District Court, D. Maryland.

Oct. 4, 2002.

Jeremy S. Friedberg, Andrew Lynch Cole, Leitess Leitess and Friedberg PC, Baltimore, MD, for Appellant.

Zvi Guttman, Law Offices of Zvi Guttman PC, Baltimore, MD, pro se.

John M. Seeberger, Law Offices of John M. Seeberger PA, Baltimore, MD, for Appellee.

Leonard Kohlenstein, Law Office of Leonard Kohlenstein, Baltimore, MD, for Debtor.

## MEMORANDUM

LEGG, District Judge.

This is an appeal of proceedings in bankruptcy before the Honorable E. Stephen Derby of the United States Bankruptcy Court for the District of Maryland. For the reasons stated below, the Court shall, by separate order, AFFIRM the bankruptcy court's decision.

## I. FACTS

The facts are laid out comprehensively in Judge Derby's Memorandum Opinion Avoiding Transfers, which he filed on September 6, 2001. These facts need not be repeated here, but are adopted by reference.

## II. STANDARD OF REVIEW

 The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, *See In re Club Assoc.*, 951 F.2d 1223, 1228 (11th Cir.1992), and are to be reversed only if an examination of the record yields the definite and firm conviction that a mistake has been made. *In re Morris Communications NC, Inc.*, 914 F.2d 458, 467 (4th Cir.1990); *see also* Bankr.Rule 8013; *Lowe's of Virginia, Inc. v. Thomas*, 60 B.R. 418, 419 (W.D.Va. 1986). The bankruptcy court's conclusions of law, however, are reviewed *de novo*. *In re Club Assoc.*, 951 F.2d at 1228–29; *In re Morris Communications NC, Inc.*, 914 F.2d at 467.

## III. ANALYSIS

CitiCapital's appeal raises the following questions:

 (ii) Did CitiCapital perfect its interest in the Oklahoma trailers before Furley's Transport, Inc., ("Furley's") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and, if so, does this perfection invalidate the Trustee's motion for avoidance with respect to these four trailers?

 (iii) Was the Trustee's right of avoidance waived with respect to the Pennsylvania trailers by either the lifting of the automatic stay, or his failure to object to the repossession notices issued by the State of Missouri for the four trailers?

 (iv) Did the trailers constitute property of the estate or a property interest of Furley's after entry of the Consent Order Granting Relief from Automatic Stay?

 (v) Did the bankruptcy court err in finding that the Trustee could avoid the post-petition perfection of CitiCapital's security interests pursuant to 11 U.S.C. § 549?

 (vi) Did the bankruptcy court err in finding that the Trustee satisfied the requirements 11 U.S.C. § 547(b)?

 (vii) Did the bankruptcy court err in finding that CitiCapital held a single unsecured claim pursuant to 11 U.S.C. § 506?

 (viii) Did the bankruptcy court err in finding that, during the ninety day preference period, the payments CitiCapital received were allocated to unsecured debt first?

 (ix) Did the bankruptcy court err in finding the value of the trailers to be $19,500 each?

The Court will address each issue in turn.

### A. The bankruptcy court correctly held that 47 Okla. Stat. Ann. § 1105(G) does not apply.

After the instant appeal had been fully briefed, the Court held an oral argument. Subsequently, on September 6, 2002, the Court wrote to counsel scheduling a second oral argument focusing on six written questions. The six questions related to a central issue in the case. That is, whether CitiCapital's security interest in the four "Oklahoma" trailers was perfected under 47 Okla. Stat. Ann. § 1105(G) by the filing in Oklahoma of the four Pennsylvania titles. The second oral argument was held on September 24, 2002. The facts pertinent to the issue are as follows:

Associates Leasing purchased four trailers in 1992 or 1993. The trailers were titled in Pennsylvania. In late 1997. Associates Leasing sold the trailers to Great Dane, L.P., which resold them to Furley's. When Furley's purchased the trailers they were titled in Pennsylvania. Each Pennsylvania Certificate of Title listed on its front, but not necessarily on its "face," Associates Commercial Corporation ("Associates Commercial") as a lienholder.[1] Associates Commercial financed Furley's purchase of the trailers, and on November 12, 1997, Associates Commercial and Furley's entered into a written Security Agreement. Furley's took physical possession of both the trailers and the titles.

For tax reasons, Oklahoma is a popular state in which to title trailers. Furley's, apparently using a motor vehicle licensing service, re-titled the four trailers in Oklahoma. The licensing service delivered to the Oklahoma Tax Commission ("OTC") the four Pennsylvania Certificates of Title.

On November 17, 1997, the OTC issued new Certificates of Title for the Oklahoma trailers. The Oklahoma Certificates did not note CitiCapital's lien. The Certificates were delivered to Furley's, which took possession of them.[2]

The next significant date in the chronology is December 1, 1998, the date by which CitiCapital's security interest must have been perfected for CitiCapital's interest to be superior to the Trustee's. This result follows because the Debtor, Furley's, filed its bankruptcy petition under Chapter 11 of the Bankruptcy Code on December 2, 1998.

On March 3, 1999, Oklahoma issued corrected Certificates of Title for the Oklahoma trailers showing CitiCapital as the lienholder as of November 19, 1997. At oral argument, counsel stated that they had been unable to learn why Oklahoma took this step. As far as they could determine, neither Furley's nor CitiCapital requested the OTC to correct the titles.

The corrected Oklahoma Certificates of Title list November 19, 1997 as the date on which CitiCapital's lien was perfected. At trial, Jim Ballard, a title consultant to the Oklahoma Tax Commission, testified that the OTC had discretionary authority to backdate liens to rectify administrative errors. This discretionary authority, as Judge Derby noted, is designed to protect lienholders' interests by accurately reflecting the date on which a lien should have been noted on a certificate of title.

On March 8, 1999, the Bankruptcy Court issued an Order granting relief from the automatic stay. On March 15, 1999, the Debtor converted from Chapter 11 to Chapter 7. On March 23, 2000, the Trustee filed the adversary proceedings against CitiCapital that are the subject of this appeal. On September 6, 2001, Judge Derby issued his Memorandum and Order avoiding the transfers.

 As Judge Derby observed, an Oklahoma statute (47 Okla. Stat. Ann. § 1110(A)(1)) specifies the steps a lienholder must take in order to perfect a security interest in a vehicle. The lienholder must tender four separate items to the OTC, including (i) a lien entry form; (ii) an

---

1. Associates Commercial, for purposes of this case, is equivalent to CitiCapital.

2. In order to see the Certificates after November 17th, one would have to inspect them at Furley's. If one went to the OTC, one would find a file for each trailer. In each file, one would find the superseded Pennsylvania certificate. A person conducting a physical inspection of the file would not know whether any lien listed on the out-of-state certificate remained extant or was of historic interest only. The file would not include a copy of the Oklahoma title.

existing certificate of title or an application for a certificate of title; (iii) the manufacturer's certificate of origin containing the name and address of the secured party, and the date of the security agreement; and (iv) the required fee. Failure to deliver any of the required items defeats a creditor's claim that its security interest is perfected. *Wheels Inc. v. Otasco Inc. (In re Otasco, Inc.)*, 111 B.R. 976, 990 (Bankr. N.D.Okla.1990), *rev'd on other grounds*, 196 B.R. 554 (N.D.Okla.1991). Perfection of security interests in vehicles (such as trailers) begins from the date on which the lien entry form is executed. *See* 47 Okla. Stat. Ann. § 1110(A)(2).

Relying in part on the testimony of Jim Ballard, the titling expert, Judge Derby held that CitiCapital had not perfected its security interest in the Oklahoma trailers as of December 1, 1998, because the creditor did not deliver any of the lien entry forms until 1999. As Judge Derby also noted, CitiCapital offered no evidence to rebut Ballard's conclusion that the creditor had failed to satisfy § 1110 by the crucial date of December 1, 1998. On appeal, CitiCapital has not seriously challenged Judge Derby's conclusion.

■ Instead, both before the bankruptcy court and on appeal, CitiCapital seeks to rely on 47 Okla. Stat. Ann. § 1105(G), which provides an alternative route for perfecting security interests in vehicles originally titled outside Oklahoma and which are subsequently re-titled in Oklahoma.[3]

The Bankruptcy Court held that § 1105(G) does not apply. The statute applies only if (i) the face of the out-of-state certificate of title contains the secured party's name, or (ii) the secured party is in physical possession of the out-of-state certificate of title. Judge Derby concluded that CitiCapital met neither of these tests. The parties agree that CitiCapital was not in physical possession of the certificates of title. Weighing the evidence, Judge Derby observed that Associates Commercial was not listed as a lienholder on the "face" of the Pennsylvania certificates. Accordingly, Judge Derby rejected CitiCapital's argument that it had perfected its security interest under § 1105.

This Court held the second oral argument to explore Judge Derby's ruling on § 1105. As discussed, the hearing centered on the six written questions that the Court posed to counsel. CitiCapital relies upon the following main points: First, Associates Commercial's name appears on the front of the Pennsylvania Certificates; the front of a document is normally understood to be its "face." Second, while Pennsylvania might not consider the front of the title to be the "face," § 1105 is an Oklahoma statute and the proper inquiry is whether the OTC would consider the front to be the "face." Third, Mr. Ballard, the Oklahoma titling expert, apparently

3. Section 1105(G) states, in relevant part:

When registering in this state a vehicle which was titled in another state and which title contains the name of a secured party on the face of the other state certificate of title, or such state certificate is being held by the secured party in that state or any other state, the Tax Commission or the motor license agent shall complete a lien entry form as prescribed by the Tax Commission. The owner of such vehicle shall file an affidavit with the Tax Commission or the

motor license agent stating that the title to the vehicle is being held by a secured party, has not been issued pursuant to the laws of the state where titled, and that there is an existing lien or encumbrance on the vehicle.... A statement of the lien or encumbrance shall be included on the Oklahoma certificate of title and the lien or encumbrance shall be deemed continuously perfected as though it had been perfected pursuant to Section 1110 of this title.

agreed with CitiCapital's position on § 1105. Fourth, the equities favor CitiCapital, which financed the purchase of the trailers. Its security interest would have been perfected had the creditor, Furley's, followed the proper steps. Finally, this is not a case in which the Trustee or any other creditor detrimentally relied on the non-disclosure.

CitiCapital's arguments, which were ably advanced by its counsel, deserve careful attention. Nonetheless, this Court concludes that Judge Derby reached the correct conclusion and that his decision must be affirmed. Section 1105(G) sets out a number of requirements that must be met before a security interest will be deemed "continuously perfected." None of these requirements were met. As the Trustee pointed out at oral argument, (i) neither the Tax Commission nor the motor license agent completed a lien entry form, (ii) the owner of the trailers did not file the required affidavit, and (iii) a statement of the lien or encumbrance was not included on the Oklahoma Certificates.

The statutory phrase "continuously perfected" also strongly implies that § 1105(G) was intended to cover cases in which a vehicle, subject to a security interest perfected in another state, is re-titled in Oklahoma. CitiCapital's security interest in the four Oklahoma trailers was never perfected under the law of Pennsylvania or any other state.

Moreover, this Court adopts Judge Derby's textual analysis of the Pennsylvania Certificates. The front of each certificate is divided into two distinct sections that are separated by a heavy line. The upper section is titled, "Certificate of Title for a Vehicle." It contains spaces for information about the vehicle, its registered owner, and the first and second lienholders. Two spaces on the top section state, "FIRST LIEN FAVOR OF:" and "SEC-

OND LIEN FAVOR OF:" These spaces were left blank, indicating that there were no liens.

Associates Commercial's name appears in the bottom section of the first page. This section, which is labeled "D," is separated from the title information by a heavy line. Section "D" is titled, "APPLICATION FOR TITLE AND LIEN INFORMATION." Associates Commercial's name appears in the space for "FIRST LIENHOLDER." Interestingly, sections A, B, and C are on the back side of the Certificate. Hence, while Associates Commercial's name appears on the front page, Judge Derby was correct in concluding that the lienholders name was not disclosed on the "face" of the title.

Additionally, the Trustee undercut Mr. Ballard's testimony about § 1105. Mr. Ballard was called as a witness by the Trustee for the limited purpose of explaining the dates on which certain events occurred. Examining the documents in the record, Mr. Ballard also opined that CitiCapital did not meet the requirements of § 1110. CitiCapital's cross examination questions expanded his testimony into § 1105. Mr. Ballard was never asked to conform his opinions to the precise language of § 1105, and Mr. Ballard was far from certain that the OTC had the raw authority to back-date the certificates. While Mr. Ballard's testimony is entitled to some weight in interpreting § 1105, it is not controlling, and Judge Derby properly discounted it.

■ Moreover, even if § 1105 was satisfied, CitiCapital would still have a major hurdle to overcome. The Bankruptcy Court did not lift the automatic stay until March 8th, which was five days after the OTC backdated the titles. The backdating, therefore, is void under 11 U.S.C. § 362(a) as an act taken during the stay

period to create a security interest. *Anglemyer v. United States,* 115 B.R. 510, 514 (D.Md.1990).

For these reasons, Judge Derby correctly concluded that CitiCapital failed to perfect its security interest under either § 1110 or § 1105.

**B. The Trustee's right of avoidance with respect to the Pennsylvania trailers was not waived by either the lifting of the automatic stay or the Trustee's failure to object to the repossession notices issued by the State of Missouri.**

CitiCapital does not contend that it possessed a perfected security interest in the Pennsylvania trailers prior to December 2, 1998. Instead it argues that the Trustee's avoidance rights were waived for the following two reasons: (i) the consent order waived the Debtor's rights, thereby waiving the Trustee's rights; and (ii) the Trustee relinquished his rights under 11 U.S.C. § 544(a)(1) by allowing the State of Missouri to issue repossession titles.

The waiver arguments raised by CitiCapital were painstakingly addressed by the bankruptcy court. As the bankruptcy court noted, a "waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from the circumstances." *Bar-Gale Indus., Inc. v. Robert Realty Co.,* 275 Md. 638, 643, 343 A.2d 529 (1975). The Trustee's avoidance rights were not expressly waived. Thus, CitiCapital's argument can only succeed if a waiver could be implied from the circumstances. After holding a trial and reviewing the evidence, the bankruptcy court concluded that neither the consent order, nor the failure to respond to the repossession notice constituted a waiver.

The Court affirms the bankruptcy court. The bankruptcy court is entitled to deference in its interpretation of its own order. *See In re Tomlin,* 105 F.3d 933, 941 (4th Cir.1997). As the bankruptcy court stated, the consent order "did not state that avoidance claims could not be pursued, nor did it waive any right to pursue such claims." (Mem. Op. at 6.)

The bankruptcy court's conclusion that the failure to respond to the repossession notices did not support an inference of waiver was not clearly erroneous. As the bankruptcy court noted, CitiCapital did not allege that the Trustee took any affirmative action to indicate that he was voluntarily giving up his rights of avoidance. Additionally, the bankruptcy court was correct in stating that there is a difference between the avoidance rights established in 11 U.S.C. § 544(a), and ownership rights. Even if the failure to respond to the repossession notices waived the Trustee's ownership rights, it did not affect his avoidance rights.

**C. The Consent Order Granting Relief from Automatic Stay did not terminate the Trustee's avoidance rights.**

CitiCapital argues that Furley's property interest in the trailers was terminated by the entry of the consent order, and that the Trustee should not have been allowed to assert avoidance rights under 11 U.S.C. §§ 544, 547, or 549. CitiCapital also argues that the consent order authorized the post-petition perfection of CitiCapital's security interests pursuant to 11 U.S.C. § 549.

None of the cases cited by CitiCapital hold that the entry of the consent order extinguished the Trustee's avoidance rights. *See, e.g., In re Incor, Inc.,* 113 B.R. 212 (D.Md., 1990) (limiting its holding

to the particular facts and the particular consent order issued by the bankruptcy court); *Matter of Fisher*, 80 B.R. 58, (Bankr.M.D.N.C., 1987) (recognizing that a bankruptcy court has the authority to relinquish its jurisdictional authority over property by granting relief from an automatic stay, but also holding that such relief is not required to result in the extermination of avoidance rights).

In this case, the bankruptcy court held that the relief it granted from the automatic stay, "did not expressly authorize the debtor-in-possession to make, or Associates Commercial to receive, a post-petition transfer of property of the bankruptcy estate free of the Trustee's rights under 11 U.S.C. § 549." (Mem. Op. at 21.) This conclusion is consistent with the holdings of other courts that "relief from [a] stay [does] not effectuate an abandonment.... In a bankruptcy context, only abandonment constitutes a waiver of a trustee's interest." *Jones v. Star Bank (In re Angel)*, 142 B.R. 194, 198 (Bankr.S.D.Ohio 1992); *see also In re Nebel*, 175 B.R. 306, 311 (Bankr.Neb.1994) (holding that conflating "abandonment" and "lifting of automatic stay" would conflict with the plain language of the Bankruptcy Code and render § 544 "superfluous").

The Court defers to the bankruptcy court's interpretation of its own order. *See Tomlin*, 105 F.3d at 941. Accordingly, the Court finds that the consent order did not terminate the Trustee's avoidance rights, nor did it authorize post-petition perfection.

### D. The bankruptcy court did not err in its analysis of the monetary transfers.

CitiCapital argues that the bankruptcy court erred in analyzing the monetary transfers made from Furley's to CitiCapital. Specifically, CitiCapital attacks the

following three conclusions of the bankruptcy court:

 (i) that the Trustee satisfied all the elements of 11 U.S.C. § 547(b);

 (ii) that CitiCapital held a single unsecured claim pursuant to 11 U.S.C. § 506; and

 (iii) that CitiCapital applied payments received in the ninety days prior to the filing date to unsecured debt first.

CitiCapital's arguments revolve around its assertion that the Trustee was unable to trace specific monetary transfers to specific accounts, an assertion the Trustee denies.

The bankruptcy court thoroughly analyzed the monetary transfers, correctly applying the relevant law to its particularized findings of fact regarding the nature of the monetary transfers. (*See* Mem. Op. at 14–20.) Accordingly, the Court hereby approves and affirms the bankruptcy court's conclusions.

### E. The bankruptcy court did not err in valuating the trailers.

The bankruptcy court relied on a document introduced by CitiCapital in valuing the trailers at $19,500 each or an aggregate value of $156,000. The bankruptcy court found that this document was the "best indication of value in the record." (Mem. Op. at 24.) This valuation was confirmed by other documentary evidence (Pl.'s Trial Ex. 1, Def.'s Trial Ex. 1, 15, and 20) and by testimony.

CitiCapital produced no evidence supporting a different valuation of the trailers. To the contrary, CitiCapital claimed that it was unable to determine to whom it sold the trailers and at what price because its files had been lost, misplaced, or were otherwise unavailable. The bankruptcy court concluded that CitiCapital's failure to produce this evidence supported an infer-

ence that the "truth would be damaging" to CitiCapital's interests, and held that the trailers should be assigned the full retail value reflected in the document produced by CitiCapital. (*See* Mem. Op. at 23.)

CitiCapital now argues that the bankruptcy court's valuation of the trailers was improper. First, CitiCapital claims that it was under the impression that a hearing would be held on the issue. Additionally, CitiCapital contends that the document Judge Derby used to establish the value of the trailers was improperly admitted. Lastly, CitiCapital challenges the negative inference that Judge Derby drew from CitiCapital's inability to produce the sale documents. The Court finds CitiCapital's arguments to be without merit.

■ The bankruptcy court was not required to hold a separate hearing on the issue of damages. *See* Local Bankr.Rule 9013–1(b)(4). The Court, moreover, defers to the bankruptcy court's conclusion that the record was sufficient to forego an additional hearing.

CitiCapital failed to object to the admission of the document on which the bankruptcy court based its valuation of the trailers. Accordingly, CitiCapital may not now protest that the document was improperly admitted. *See* Fed.R.Evid. 103(a).

■ Finally, CitiCapital argues that Judge Derby should not have relied on the negative inference. The Trustee, CitiCapital contends, could have himself obtained evidence establishing the value of the trailers. This contention is without merit. *See Evans v. Robbins*, 897 F.2d 966, 970 (8th Cir.1990) (holding that a negative inference should only be drawn where "the evidence is available to the suppressing party, but not the party seeking production"). The bankruptcy court concluded that CitiCapital was acting in bad faith when it failed to produce the requested information. (*See* Mem. Op. at 23.) Spe-

cifically, it stated that "the court does not accept that ... [Associates Commercial] could not have obtained the information from secondary or third party sources with reasonable search or inquiry." (*Id.*) Additionally, the bankruptcy court also concluded that the information was "particularly" in the possession of CitiCapital. (*Id.* at 24.) Accordingly, the negative inference was properly drawn.

## IV. Conclusion

For the reasons stated above, the bankruptcy court's decision is AFFIRMED. The CLERK is instructed to CLOSE the CASE.